**FEDERATION OF ADVERTISING INDUSTRY REPRESENTATIVES, INC., Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.**

No. 97 C 7619.

United States District Court, N.D. Illinois, Eastern Division.

July 29, 1998.

Paul M. Levy, Phillip J. Zisook and Brian D. Saucier of Deutsch, Levy & Engel, Chicago, IL, for plaintiff.

Kenneth L. Schmetterer, Kenneth Obel and Adam M. Kingsley of the Corporation Counsel City of Chicago, Chicago, IL, for defendant.

Linda Wawzenski of United States Attorney and Gerald C. Kell of Office of Consumer Litigation, for amicus.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action involves a frontal attack by Federation of Advertising Industry Representatives, Inc. ("Federation"[1]) on an ordinance ("Ordinance," now Chicago Municipal Code ("Code") § 5.17) that was initially adopted by the City of Chicago ("City") on September 10, 1997 and was then amended on February 6, 1998, and that imposes substantial prohibitions on the advertising of both cigarettes and alcohol in any "publicly visible location" (a term that is defined to include outdoor billboards, sides of buildings and free-standing signboards) in major areas of Chicago. To a substantial extent Federation's arguments are constitutional in nature, but in material part Federation challenges the validity of the ordinance in the face of the statutory preemption enacted by Congress as part of the Federal Cigarette Labeling and Advertising Act ("Act," 15 U.S.C. §§ 1331–1341).

As the Act's title indicates, by its terms that statutory provision (Act § 1334, often referred to here as the "Preemption Statute") bears directly on the Ordinance's provisions regarding cigarette advertising. But as a later section of this opinion demonstrates, the Ordinance's invalidity in those terms also impacts on the related prohibition of alcohol advertising. In any event, both because the constitutional arguments (both pro and con) are largely arcane and because of the long-entrenched jurisprudential principle that arguments as to constitutionality should be faced only if some less fundamental basis for disposition is unavailable,[2] this opinion will address only the federal preemption issues.

■ What is implicated in that respect are the meaning and applicability of this provision of the 1969 amendment to the Act—the Preemption Statute, found at Act § 1334(b):

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

In its original form that provision had created a much narrower scope of preemption, which was focused only on forbidding any variants (whether federal, state or local) on the federally-prescribed legend to be placed on cigarette packages:

No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.[3]

---

1. This shorthand designation is used in preference to Federation's acronymic self-designation "FAIR," not so much to express a value judgment about such a self-laudatory term (something that is all too common among the names that organizations seem to choose with an eye toward the acronyms that those names thus make available) as because of this Court's general preference for the use of names rather than alphabet-soup initials to refer not only to parties litigant but also to such things as legislative enactments.

2. See Justice Brandeis' famous concurrence in *Ashwander v. TVA*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936), which is still regularly invoked by Supreme Court Justices both in majority opinions (see, e.g., *United States v. National Treasury Employees Union*, 513 U.S. 454, 478, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)) and in concurring opinions (see, e.g., *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1021, 140 L.Ed.2d 210 (1998)), to say nothing of dissenting opinions urging that a Court majority should not have reached some constitutional issue.

3. [Footnote by this Court] Both that original version and the current version of Act § 1334(b) were and are an accompaniment to the still-

But when in 1969 Congress strengthened the package warning label by shifting from a statement that cigarette smoking "may be hazardous" to the stronger statement that it "is dangerous," Congress not only broadened the preemptive force of the federal legislation but it did so in the less pinpointed language that has first been quoted in this paragraph.

It should be emphasized that this Court holds no brief for smoking as a habit, nor does it any way minimize the enormous costs in health (or, to be even more plain, in deaths) that are annually sustained because of smoking. In accordance with what it would guess probably represents the views of the vast majority of Americans, this Court has been appalled by recent revelations about what is reported to be a level of total callousness on the part of the tobacco industry—an industry that, if those revelations are true, was fully aware that the old pejorative label of "coffin nails" was literally as well as figuratively an accurate description of cigarettes, and yet the industry deliberately concealed that knowledge to maintain and increase its profits.

But the ruling that is set out hereafter is not a function of the desirability or undesirability of permitting either cigarette billboard advertising or the cigarette industry's encouragement of smoking by minors. After all, this Court's role is not a legislative one, in which it is free to formulate or implement social policy by its pronouncements. Instead this Court is called upon to determine whether Congress intended to leave open to local governments such as City the ability to prohibit cigarette advertising based on health concerns, an area that Congress has chosen to occupy in part by requiring strong warnings on cigarette packages, but in which area Congress has *not* chosen (as it might have) to impose a universal prohibition or partial prohibition of billboard advertising because of

health concerns—or, with Congress not having chosen to take that route, in which it has also *not* chosen instead to announce legislatively that state and local governments have a continuing power to prohibit billboard advertising on health-related grounds.

In terms of the appropriate construction and application of the Preemption Statute, all three of the submitters [4] seek to rely on *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), a reliance that is scarcely surprising in view of that decision's having considered the very preemption provision that is implicated here. But *Cipollone* really does not mark out a path for resolution of the issue posed in this case. Not only did *Cipollone* address the preemption or nonpreemption of state-based activities in a very different context (the area of state common law claims based on the use of tobacco), but also Parts V and VI of Justice Stevens' *Cipollone* opinion (which might have held the greatest promise for casting light on the quite different questions involved here, at least in the language of the discussion if not via the actual decision) did not command a majority of the Court. Instead the Stevens opinion carried a plurality of four Justices, and it is not at all clear from the three-Justice partial concurrence and partial dissent authored by Justice Blackmun or from the two-Justice partial concurrence in the judgment and partial dissent authored by Justice Scalia just what might be considered as the *Court's* views on the problem that is presented here.

What *Cipollone* does teach, however—found in the earlier portion of Justice Stevens' opinion in which he speaks for the Court—provides a valuable springboard for further analysis. To begin with, *Cipollone,* 505 U.S. at 517, 112 S.Ct. 2608 (citations omitted) taught that the Act's preemptive scope was to be measured *entirely* by the express language in Act § 1334, without ref-

---

4. existing preemption provision of Act § 1334(a), which proscribes any statement on cigarette packages other than the warning prescribed by Congress:

> No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

4. On July 28 this Court granted the last-minute motion of the United States for leave to file a brief amicus curiae, in which it supports City's position. That brief is addressed—albeit briefly (an aside for fans of Tom Swifties)—in the Appendix to this opinion.

erence to any notions of implied preemption stemming from the substantive provisions of the legislation:

> In our opinion, the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in § 5 of each Act [Act § 1334]. When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation. Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted. In this case, the other provisions of the 1965 and 1969 Acts offer no cause to look beyond § 5 of each Act. Therefore, we need only identify the domain expressly pre-empted by each of those sections. As the 1965 and 1969 provisions differ substantially, we consider each in turn.

And next, *Cipollone, id.* at 518–19 expressly stated that the precise and narrow 1965 version of Act. § 1334(b)—concededly very different from the 1969 version now at issue—did no more than to preempt state (as well as federal) rulemaking bodies from imposing *labeling* requirements other than those prescribed by Congress.

With that background, it is time to look at the prohibitions that are set out in the Ordinance, which must be examined in light of the broader 1969 version of the Preemption Statute that is still in place today. Here is Code § 5.17 as enacted, immediately following the Ordinance's recital of fully 10 "Whereas" clauses that the City Council has specified as the basis supporting that enactment:

> (a) No person may place any sign, poster, placard or graphic display that advertises cigarettes or alcoholic beverages in a publicly visible location. In this section, "publicly visible location" includes outdoor billboards, sides of buildings, and freestanding signboards. This section shall not apply to:

> 1. (A) With respect to cigarettes, the placement of signs, including advertisements, inside any premises used by a holder of a license required by chapter 4–64 of this code; or (B) With respect to alcoholic beverages, the placement of signs, including advertisements, inside any premises used by a holder of a license required by chapter 4–60 of this code; or (C) On commercial vehicles used for transporting cigarettes or alcoholic beverages;

> 2. (A) With respect to cigarettes, any sign that contains the name or slogan of the premises used by a holder of a license required by chapter 4–64 of this code that has been placed for the purpose of identifying such premises; or (B) With respect to alcoholic beverages, any sign that contains the name or slogan of the premises used by a holder of a license required by chapter 4–60 of this code that has been placed for the purpose of identifying such premises;

> 3. Any sign that contains a generic description of cigarettes or alcoholic beverages;

> 4. (A) With respect to cigarettes, any neon or electrically charged sign on premises used by a holder of a license required by chapter 4–64 of this code that is provided as part of a promotion of a particular brand of cigarettes; or (B) With respect to alcoholic beverages, any neon or electrically charged sign on premises used by a holder of a license required by chapter 4–60 of this code that is provided as part of a promotion of a particular brand of alcoholic beverage;

> 5. Any sign at a special event, as that term is defined in section 10–8–335 of this code;

> 6. Any sign on a CTA vehicle;

> 7. Any sign on property owned, leased or operated by the Illinois Sports Facilities Authority;

> 8. Any sign at Comiskey Park, Soldier Field, the United Center, or Wrigley Field;

9. Any sign on property adjacent to an interstate highway; or

10. Any sign located in a C3 District (Commercial–Manufacturing), a C4 District (Motor Freight Terminal), or any M District (Manufacturing).

(b) This section shall not be construed to permit any display that is otherwise restricted or prohibited by law.

(c) The penalty for violation of this section shall be as set forth in section 11.13 of this Title.[5]

And now at last to the task at hand. City seeks to place heavy reliance on the Fourth Circuit's decision in *Penn Advertising of Baltimore, Inc. v. Mayor & City Council of Baltimore,* 63 F.3d 1318, 1324 (4th Cir.1995), vacated and remanded 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996) for further consideration in light of *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), and then readopted (101 F.3d 332 (4th Cir.1996)) as modified by the contemporaneously-issued opinion in *Anheuser–Busch, Inc. v. Schmoke,* 101 F.3d 325 (4th Cir.1996). *Penn Advertising* rejected the claimed preemption by the Act of a Baltimore ordinance (on which Chicago has modeled its own Ordinance) on a basis stated succinctly in these terms, 63 F.3d at 1324 (emphasis in original):

> Applying the methodology described in *Cipollone* to Ordinance 307, we conclude that the Federal Cigarette Labeling and Advertising Act does not preempt the ordinance. Ordinance 307 limits only the *location* of signs that advertise cigarettes, but it does not address the *content* of such advertisements. The ordinance neither imposes a duty or relieves a burden on cigarette advertisers *based on smoking and health.*

Two things make that ruling unpersuasive here. For one thing, the Second Circuit in *Vango Media, Inc. v. City of New York,* 34 F.3d 68, 72–74 (2d Cir.1994) has taken a much more analytical and reasoned approach to the reading of the Preemption Statute than the sort of ipse dixit statement just quoted from *Penn Advertising* (which it will be noted begins by contrasting two concepts—"location" versus "content"—that are found nowhere in the congressional language of the Preemption Statute). And second and more important, the ensuing discussion in this opinion explains that the very nature and origin of Chicago's Ordinance bring it squarely within the literal coverage of the Preemption Statute, leaving no room for a reading that deviates from that coverage.

There is of course no question that the Ordinance contains a "prohibition," so that it clearly conforms to one component of the Preemption Statute. Nor is there any question that the Ordinance's "prohibition" is "with respect to the advertising or promotion of cigarettes," so that it equally clearly conforms to another of the Preemption Statute's essential requirements. Where the parties part company is on the sole remaining question: whether, in the language of the Preemption Statute, the prohibition is "based on smoking and health."

Taking a leaf[6] from the pages of *Penn Advertising,* City begins its argument on

---

**5.** [Footnote by this Court] Originally Ordinance § 2 contained a provision that made the new enactment applicable only to, "or interpreted to have an effect on," any contract executed after the Ordinance's effective date and any renewal of a preexisting contract that began after the effective date. Because Ordinance § 3 specified that it would take effect 30 days after its passage and publication, the City Council then became concerned that too many actions that might have been taken during that 30–day period could have gutted the effectiveness of the Ordinance. Accordingly, on February 6, 1998 the City Council amended the Ordinance by sharply limiting any such grandfather clause, eliminating the earlier version of Ordinance § 2 and substituting instead:

> This ordinance shall take effect upon its passage and approval. Provided, however, that no affected sign, poster, placard or graphic display that was in place in a publicly visible location before January 31, 1998, need be removed pursuant to this ordinance for 180 days from the effective date of this ordinance. Provided further, that no replacement, alteration or substitution of an affected sign, poster, placard or graphic display shall be permitted during said 180–day period.

Federation launches a separate attack on the constitutionality of that amendatory provision, but given the nature of this opinion that constitutional issue is another question that need not be resolved here.

**6.** A tobacco leaf?

that score by emphasizing that the Ordinance "regulates only the location, not the content, of tobacco billboards" (City Mem. 2). That position of course ignores the express provision of the Preemption Statute that outlaws not only (1) any state law *"requirement . . .* based on smoking and health . . . with respect to the advertising or promotion of . . . cigarettes" but also (2) any *"prohibition* based on smoking and health . . . with respect to the advertising or promotion of . . . cigarettes." To be sure, a "requirement . . . with respect to the advertising or promotion of . . . cigarettes" may well consist of a regulation of advertising *content* (for example, the same kind of state-dictated or locally-dictated delivery of information that was the sole subject of the original 1965 version of the Preemption Statute, or that was the subject of the ordinance at issue in *Vango Media* ). But by contrast, a "prohibition . . . with respect to advertising . . . of cigarettes" denotes a flat-out *bar* of such advertising—and if such a bar in terms of location is indeed "based on smoking and health," it is still specifically forbidden by the express terms of the Preemption Statute. Hence what City has sought to pose in that respect by setting off "location" against "content" is really based on a false dichotomy that is not found in the Preemption Statute itself.

But the main string that City seeks to affix to its bow—the argument to which it devotes fully 17 of the 29–plus pages of its memorandum that relate to the cigarette portion of the Ordinance (running from the middle of page 15 to the top of page 32, with all other arguments spanning only from the bottom two lines on page 2 to the middle of page 15)—is the one that bears this heading (City Mem. 15):

III. The Purpose of the Ordinance is to Promote State Laws Making It Illegal for Minors to Purchase or Be Sold Cigarettes

This time City seeks to create a mutually exclusive universe comprising two elements: one, an ordinance prohibition that is "based on smoking and health," which would concededly run afoul of the Preemption Statute, and the other an ordinance prohibition that is aimed at preventing the *illegal* purchases of cigarettes by, and sales of cigarettes to, mi-

nors—things that constitute a preexisting illegality under both 720 ILCS 675/1 § 4–64–200. To facilitate a full understanding of City's arguments in that respect, without running any risk of mischaracterization that would be involved in a paraphrase, here is how City's Mem. 15–16 summarizes its many pages of argument that follow:

Even if the FCLAA [the Act] were interpreted to preempt regulations governing the mere placement of cigarette advertising and this interpretation were found to be constitutional, the Ordinance still would not be preempted because it is not "based on smoking and health." Rather, the purpose of the Ordinance is to effectuate state and local laws making it illegal for persons under the age of 18 to purchase or be sold cigarettes.

The Ordinance explicitly states that its purpose is to reduce illegal transactions— i.e., cigarette sales to or purchases by minors. Furthermore, the preamble is focused on illegal transactions, not health, and on the connection between outdoor advertising and illegal activities. Indeed, the very first sentence of the Ordinance recites that it is unlawful for any individual under the age of 18 to purchase or be sold cigarettes. All of the recitals, or "whereas" clauses, deal with the illegality of cigarette sales to or purchases by minors, the degree of cigarette consumption by minors, the extent of outdoor advertising of cigarettes, the unique nature of cigarette billboards, the relationship between advertising of cigarettes and consumption of cigarettes, and the need for the Ordinance. Nothing in the recitals indicates that the purpose of the Ordinance, vis-a-vis cigarettes, is anything other than preventing illegal transactions.

In thus attempting to separate the prevention of illegal transactions from the Preemption Statute's provision that bars any "prohibition based on smoking and health" with respect to cigarette advertising, City seeks to downplay a few of the "Whereas" clauses that precede the Ordinance itself—a clause that contains references to articles in scientific journals that Federation (for its part) portrays as bearing heavily on the effects of

smoking on health, as well as a clause that begins "Studies have shown that our nation's adolescents commonly use cigarettes, and that cigarettes constitute a 'gateway' drug for these youth, i.e., a substance which is used by adolescents as a first drug and opens the door for use of other 'harder' substances at a later date." And in a further effort to buttress that second dichotomy, which seeks to lay stress on the hoped-for reduction of illegal transactions (cigarette sales to or purchases by minors) as assertedly unrelated to "smoking and health," City similarly denigrates Federation's efforts (Federation Preemption Mem. 7–16) to point (1) to the already-referred-to portions of the "Whereas" preambles, (2) to statements of various aldermen in the course of the hearings on the Ordinance that linked its purposes to health concerns and (3) to documents contained in the legislative record that reflect the same linkage.

But all of those efforts turn out (to make a bad pun) to be nothing more than a smoke screen. What instead proves to be fatal to City's case is that the entire structure of its argument, erected as it is on the supposed distinction between a stated goal of preventing illegal cigarette sales to or purchases by minors (City's characterization of the Ordinance) and a goal that links "smoking and health" (and would thus come within the *express* prohibition of the Preemption Statute), collapses because it proves to be built on a foundation of quicksand—of City's outright misrepresentation of the Ordinance's underpinning.

In that regard, here is what City's Mem. 20 states as the purported justification for that supposed contrast between (1) the Ordinance's several "Whereas" clauses that reiterate a concern for promoting the purpose of preventing illegal cigarette sales to or purchases by minors and (2) any linkup between

"smoking and health" as a basic purpose of the Ordinance:

First, plaintiff is incorrect about the historical basis for state laws making it illegal to sell cigarettes to minors. Such laws were originally enacted before the health risks of cigarette smoking were established. A law making it illegal for any person to "sell, buy or furnish any cigar or cigarette or tobacco in any of its forms, to any minor under sixteen years of age" was enacted in Illinois as early as 1887. *See* 1887 Ill.Laws 298 (codified at Ill.Comp.Stat. ch. 38, sec. 207h) (City's 12(n), Ex. C). The first medical studies suggesting a connection between smoking and illness did not appear until the 1920's. *See Cipollone*, 505 U.S. at 513[, 112 S.Ct. 2608]. Historically, such laws fall within a category of laws pertaining to activities that were lawful for adults, but viewed as morally inappropriate for children, such as gambling, acquiring pornography or purchasing alcoholic beverages. These laws might have incidentally protected the health of minors, but this was not the principal objective. *See* Edward O. Correia, *State and Local Regulation of Cigarette Advertising*, 23 J.Legis. 1, 16 (1997). Plaintiff thus has failed to show that the state law the Ordinance seeks to effectuate is itself based on health.

Not to put too fine a point on matters, that statement is simply and demonstrably false, and it has required no more than a few minutes' search by this Court to prove it.[7]

*Ecclesiastes* 1:9 and 1:10 had it right:

The thing that hath been, it is that which shall be; and that which is done is that which shall be done: and there is no new thing under the sun. Is there any thing whereof it may be said, See, this is new? it hath been already of old time, which was before us.

---

7. It is frankly astonishing for City to have made the just-quoted statements in the text. Only a moment's resort by this Court to 720 ILCS 675/1, which is the current version of the 1887 Illinois statute to which City refers (the statute that was in turn the precursor of City's prior and present versions of its earlier-quoted ordinance containing like prohibitions against cigarette sales to and purchases by minors), was needed to disclose that the Illinois Supreme Court decision referred to in the next paragraph of the text is the *only* case cited as an annotation to that statute. This Court does not of course suggest that City's counsel intentionally suppressed any reference to that vitally important decision—rather the omission of any mention of that decision, when coupled with City's Memorandum's flatly incorrect portrayal just quoted in the text, has to reflect seriously (indeed, fatally) inadequate research on counsel's part.

Listen to what the Illinois Supreme Court said exactly a century ago in upholding the validity of the then-existing prohibition against cigarette sales to minors (basically the same prohibition that is now in force, both in the state statute and in the Code, but with such minor changes as increasing the age of the prohibition from 16 years to 18 years). Here is *Gundling v. City of Chicago*, 176 Ill. 340, 347–49, 52 N.E. 44, 45–46 (1898), which is quoted at length because of its obvious and compelling significance to the present dispute:

> The measure has relation to the public health, and is required in that interest. With this object evidently in view, the legislature passed an act, approved June 15, 1887, in force July 1, 1887, entitled "An act to prohibit selling, giving or furnishing tobacco, in any of its forms, to minors, and providing a penalty therefor." Section 1 of said act provides: "That hereafter no person or persons in this state shall sell, buy for or furnish any cigar or cigarette, or tobacco in any of its forms, to any minor under sixteen years of age, unless upon the written order of parent or guardian." Section 2 provides that, if any person or persons shall violate the provisions of Section 1, he, she, or they shall, on conviction thereof, forfeit and pay for each offense the sum of $20. The object and purpose of this enactment were to subserve and protect the health and welfare of the class of persons to whom the act refers, and to whom a sale is forbidden. The consensus of opinion in reference to the use of cigarettes is that they are injurious to the young with immature minds, and common observation causes us to know that tobacco in the form of cigarettes is more largely used by those of young and immature minds than by any other class.
>
> It is urged by appellant that the city council has no right to single out a particular form of manufactured tobacco, and provide for its regulation, and require a license for its sale, without making the requirement apply to all the forms in which tobacco may be used. It being well known that young persons of weak and immature minds are more liable to use tobacco in the form of cigarettes than in any other form,

a legislative body may properly provide for the regulation and sale of that article in the form in which it is likely to be most deleterious and injurious, and may restrict the sales of that particular form of tobacco. Paragraph 66, before quoted, expressly authorizes the adoption of ordinances necessary to police power; and paragraph 78 is an express authorization of the city council to make all regulations necessary or expedient for the promotion of health or the suppression of disease. Under these two provisions, express authority is granted the municipality to pass all ordinances or requirements tending to promote the public health, morals, security, comfort, and welfare of the community. Such legislation is included within the provision authorizing the enactment of police regulations. The most important of police powers is that of caring for the health of the community, and that is inherent in a municipality, and may be exercised whether expressly granted or not, because the preservation of the health of the public is indispensable to the existence of the municipal corporation. *Ferguson v. City of Selma*, 43 Ala. [398,-]400.

> The regulation of police power is hardly susceptible of exact definition, as the exigencies of each case are varying, and the cases are innumerable where the health of the inhabitants of the municipality may be in some degree endangered. When the city council considers some occupation or thing dangerous to the health of the community, and, in the exercise of its discretion, passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation as being humane and essential to the preservation and protection of the community. Municipalities are allowed a greater degree of liberty of legislation in this direction than any other. The necessity for action is often more urgent, and the consequences of neglect are more detrimental to the public good, in this than in any other form of local evil. It being clear that the public health and welfare of a large class in the community would be subserved and protected by ordinances regulating the sale of tobacco in one of its

manufactured forms, an ordinance directed to the protection of the health or welfare of that particular class of the community would be a police regulation within the power of a city to enact under the power expressly granted by paragraphs 66 and 78. An ordinance of this character is not in conflict with any principle of the common law, or with any public or general statute, and infringes no private right not necessarily infringed in the interests of good government. It subserves the public welfare, protects the health of the community, and is included within the express powers granted the city council. The ordinance was not void.

Incidentally, *Gundling v. City of Chicago* was then affirmed by the United States Supreme Court (177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725 (1900)), but as might be expected the affirmance made only brief passing reference to the essentially state law question of enacting legislation based on considerations of public health (*id.* at 188, 189, 177 U.S. 183).

What we have in this case, then, is an Ordinance that—placing the definitional terms of the Preemption Statute in quotation marks—is a "prohibition" of cigarette billboard "advertising" that is unquestionably "based on smoking and health." As to the latter term, the only one by which City relies to extricate itself from the Preemption Statute, on the City's own version of the matter the Ordinance is aimed at illegal sales of cigarettes to minors, and *Gundling* demonstrates beyond peradventure that *the* reason for such sales having been made illegal in the first place was the perceived threat to the health of those minors.[8] In those terms there is no ambiguity whatever in the Preemption Statute, or in its all-fours application to the Ordinance under *Cipollone,* 505 U.S. at 517, 112 S.Ct. 2608, and that spells both the beginning and the end of the statutory analysis. City is thus hoist by its own pe-

tard: It has itself demonstrated (although perhaps inadvertently, given its fundamentally flawed research) that the Ordinance is preempted by the Preemption Statute and that it is hence invalid as it relates to cigarette advertising.

■ All that remains for consideration is whether the Ordinance's provisions relating to the corresponding prohibition of alcohol advertising, a prohibition that is not within the scope of the same preemption analysis, should survive despite the just-announced invalidation of the Ordinance's prohibition against cigarette advertising. That is of course a function of the Ordinance's severability or nonseverability, a question of state law (*Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996) (per curiam)). And although the parties are again at odds in their proposed resolution of that question, they have no quarrel as to the standards that are consistently announced and applied by the Illinois Supreme Court in that respect—see *Cincinnati Ins. Co. v. Chapman,* 181 Ill.2d 65, 81–82, 229 Ill.Dec. 264, 691 N.E.2d 374, 381–82 (1998) (citations omitted):

> Although we acknowledge the severability clause contained in section 55 of the Act, such a clause is not necessarily conclusive as to whether the remainder of the Act can stand. A court's authority to eliminate invalid elements of an act and yet sustain its valid provisions derives not from legislative fiat, but rather from the powers inherent in the judiciary. In fact, the practice of holding statutory provisions severable from those that are found to be invalid originated in the judiciary "long before the innovation of separability clauses." Thus, although the use of severability clauses has become a "common legislative drafting practice" in "modern" times, it is "regarded as little more than a mere formality."

---

8. If there were any doubt on this score, based on some sleight-of-hand notion that the Ordinance's predominant focus is on illegality rather than on the health-related considerations that prompted that illegality to begin with, it would be dispelled by the Supreme Court's decision in *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 106–07, 112 S.Ct. 2374, 120 L.Ed.2d 73

(1992) (decided less than a week before *Cipollone*) that any provision that "serves several objectives rather than one" is still preempted even though fewer than all of those objectives are within the preempted area. But that is simply an added and really unnecessary fillip, for any attempted distinction in those terms is really a distinction without a difference.

Due to the historical background of the severability clause, courts view the clause not as "an 'inexorable command,'" but as an aid to statutory construction. Indeed, this court has long held that the test of severability is whether the valid and invalid provisions of the Act are "'so mutually "connected with and. dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently * * *".'"

In this instance the Ordinance itself contains no specific severability clause, unlike a whole set of other provisions of the Code that do contain such specific clauses. And given the teaching of *Cincinnati Ins.* and other cases that even a specific severability clause is "regarded as little more than a mere formality," that notion of "mere formality" clearly applies a fortiori where, as here, City points only to the general severability clause in Code § 1–4–200 (a well-established principle recently reconfirmed in *People v. Warren,* 173 Ill.2d 348, 371–72, 219 Ill.Dec. 533, 671 N.E.2d 700, 712 (1996)).

This Court has examined the cases cited by both sides with care. Any reader of the most recent extended pronouncements of the Illinois Supreme Court in this area (*Cincinnati Ins.,* 181 Ill.2d at 85–86, 229 Ill.Dec. 264, 691 N.E.2d at 383; *Best v. Taylor Mach. Works,* 179 Ill.2d 367, 464–66, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1103–04 (1997)) cannot help but be struck by that Court's tendency, in its search for legislative intent, to treat intricately interwoven legislative provisions such as the Ordinance—with its common focus on the prohibition of advertising and on the protection of minors, though protecting against two perceived evils—as the type of integrated whole that triggers infectious invalidity. And that approach appears especially appropriate here, where the numerous "Whereas" clauses that the City Council has used to underpin the Ordinance either treat tobacco and alcohol as. a paired entry (as is

done in the text of the Ordinance) or focus almost entirely on cigarette-related considerations, picking alcohol up only as a sort of caboose attached to the cigarette train.

Accordingly this Court finds no real predicate for determining that the restraints on alcohol advertising should survive independently of those on cigarette advertising. If the City Council wishes on reconsideration of the subject of alcohol advertising as an independent matter free of any preemption problems (but also being aware of the other challenges that have been posed by Federation), it is free to do so in the future. But for now, just as in *Cincinnati Ins.* and *Best,* the invalid portions of the Ordinance cannot rationally be severed from the residue, and the entire Ordinance must fall.

### Conclusion

This opinion has dealt with the subject of preemption of the Ordinance by the federal Preemption Statute, an issue brought on for resolution by Federation's motion for summary judgment on that score and City's response to that motion. Both sides have complied with the requirements of Fed.R.Civ.P. ("Rule") 56 and this District Court's implementing provisions of General Rule 12(M) and 12(N) in that respect. Because there is no genuine issue of material fact and Federation is entitled to a judgment as a matter of law, the Ordinance must be found to be invalid in its entirety.

In accordance with the prayer for relief in Federation's Complaint:

1. This Court declares that the Ordinance is preempted by Act § 1334(b) and is therefore null, void and of no legal effect.

2. City and all of its officers, agents, servants, employees and attorneys are permanently enjoined from enforcing the Ordinance or taking any action pursuant thereto.

That effectively provides Federation with full relief,[9] except for its unresolved prayers for attorneys' fees (an issue that does not affect the finality of this order—see *Budinich v.*

---

9. This opinion's determination as to preemption of course moots all of the other areas of dispute between the litigants, and that being the case, no

view is expressed by this Court on the subject of the Ordinance's constitutionality or unconstitutionality.

*Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)) and for damages (an issue as to which Federation, although having the burden of proof, has provided no evidence in support of its motions for summary judgment, so that its prayer is denied). Accordingly this is a final order disposing of this action.

*Appendix*

As n. 4 reflects, this Court has granted the last-minute motion of the United States for leave to file an amicus curiae brief. Because the analysis in the text of this opinion renders the position that has been advanced by the United States a nonmaterial digression, this Appendix will deal with the United States' argument briefly and separately.

Essentially the United States contends that only it can provide an interpretation of the Preemption Statute that is entitled to *Chevron* deference (the familiar doctrine that is named after *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). And in that respect the United States points to the statement in *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 912, 137 L.Ed.2d 79 (1997) that, at least in the circumstances of that case, the deference customarily due to an agency's interpretation of a statute that it administers was not diminished by the fact that the "interpretation comes to us in the form of a legal brief" rather than in the more conventional way.

But the difficulty with that entire approach in this case is that by its own terms the *Chevron* doctrine does not come into play if the statute at issue is unambiguous in its application to the question at issue in the case. Earlier this year our Court of Appeals has reconfirmed that principle in *Bankers Life and Cas. Co. v. United States,* 142 F.3d 973, 983 (7th Cir.1998). And as the foregoing opinion has reflected at great length, the Preemption Statute unambiguously covers the Ordinance involved in this case (once, of course, the fresh air of analysis has blown away City's smoke screens that have sought to obscure the fact that the cigarette advertising prohibition in the Ordinance is indeed "based on smoking and health").

Hence the United States' amicus curiae submission adds nothing to the dialogue. What has been said in the text of the opinion stands.