In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-1909

FEDERATION OF ADVERTISING INDUSTRY
REPRESENTATIVES, INC., an Illinois
not-for-profit corporation,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 7619—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 10, 2003—DECIDED APRIL 25, 2003

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case concerns a continuing litigation involving a now-repealed Chicago city ordinance. The district court held that repeal of the ordinance ended the ongoing controversy and rendered the case moot. The district court also found that the plaintiff was not entitled to attorney's fees. For the reasons set out below, we affirm.

## I.  History

In September 1997, the Chicago City Council passed an ordinance prohibiting the placement of alcohol and cigarette advertisements in "publicly visible places," defined as outdoor billboards, sides of buildings, and freestanding signboards. The ordinance contained numerous exceptions allowing such advertisements in commercial zones, manufacturing zones, and other locations. Also included in the ordinance was a "grandfather" clause, which honored advertising contracts entered into before the effective date of the ordinance. The grandfather clause was removed, however, when the City learned that advertisers, relying on the clause, had entered into multiple new contracts and that these new contracts would essentially undermine the purpose of the ordinance.

Federation of Advertising Industry Representatives, Inc., an association of companies that displays advertisements for various products including cigarettes and alcohol, filed suit against the City, alleging that the ordinance violated the First Amendment and was preempted by both federal and state statutes.[1] In its complaint, Federation sought injunctive and declaratory relief, and made a claim for damages and attorney's fees.

In July 1998, Federation moved for summary judgment on its First Amendment and preemption claims. The district court granted the motion with respect to the preemption claim,[2] holding that the portions of the ordinance relating to cigarette advertising were preempted by § 5(b)

---

[1]  Federation also added a federal Contracts Clause claim, U.S. CONST. art. I, § 10, when the City amended the ordinance to remove the grandfather clause.

[2]  The district court did not rule on the First Amendment claim at this time, holding that motion in abeyance while it determined the preemption issue.

of the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. § 1334(b),[3] and that the portions relating to alcohol advertising were not severable. *Fed'n of Adver. Indus. Rep., Inc. v. City of Chicago*, 12 F. Supp. 2d 844, 853 (N.D. Ill. 1998). The district court awarded Federation declaratory and injunctive relief, but denied the claim for damages, stating that Federation had presented no evidence that it had suffered damages. Also, in a later order, the district court, pursuant to 42 U.S.C. § 1988, awarded Federation attorney's fees in excess of $400,000 and nontaxable expenses of nearly $15,000.

The City appealed the grant of summary judgment and the award of attorney's fees, but Federation did not appeal the district court's denial of its damages claim. In that first appeal, we reversed the district court's ruling that the FCLAA preempted all parts of the ordinance regulating cigarette advertising, finding instead that only a small exception in the ordinance allowing advertising of generic, as opposed to brand specific, tobacco products was preempted.[4] *Fed'n of Adver. Indus. Rep., Inc. v. City of Chicago*, 189 F.3d 633, 639-40 (7th Cir. 1999). This preempted portion, we held, was severable from the balance of the statute; thus, we reversed the district court's decision that the ordinance was invalid in its entirety and

---

[3] This section provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Chapter." 15 U.S.A. § 1334(b) (2003).

[4] This holding was based on the fact that we found the ordinance to be basically a land-use regulation that did not interfere with the FCLAA's advertising and labeling requirements. We held that the exception relating to generic tobacco advertising was preempted, however, because it regulated without regard to any land-use consideration. *Federation*, 189 F.3d at 639-40.

affirmed that decision only as it related to the exception for generic tobacco advertising. *Id.* at 640. We remanded for further proceedings consistent with our opinion. *Id.*

On November 1, 2000, the City amended the ordinance to remove the preempted exception and to remove several other exceptions, the constitutionality of which had been called into question by the Supreme Court decision in *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173 (1999). Subsequently, Federation amended its complaint to drop the preemption claim and to eliminate entirely its challenge to the cigarette-advertising portions of the ordinance.

On June 5, 2001, Federation moved for summary judgment on the First Amendment grounds, arguing that the ordinance's regulation of alcohol advertising was an invalid content-based regulation on noncommercial speech, and in the alternative, that the ordinance was an invalid restriction of commercial speech. Before the City filed a response, the Supreme Court decided *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), which held that a Massachusetts statute, similar to the statute in this case, was preempted by the FCLAA and violated the First Amendment. *Id.* at 551, 561.

Federation filed a supplemental brief arguing that *Lorillard* required the district court to grant its motion for summary judgment. The City did not respond to the merits of Federation's summary judgment motion, but rather on September 13, 2001, filed a cross motion to dismiss based on mootness, citing the City's intention to repeal the ordinance in light of *Lorillard* and noting that since no damages claim remained, repeal would provide Federation full relief and end the controversy. The City did not concede the unconstitutionality of its ordinance, which it contended was materially different from the ordinance at issue in *Lorillard*; rather, it stated that the

risks of going forward in light of *Lorillard* had persuaded it to repeal the ordinance. On October 31, 2001, the City Council repealed the ordinance, and a week later the district court granted the City's motion to dismiss, finding that the repeal of the ordinance had rendered the case moot.

Subsequently, Federation filed a motion for rehearing, on the grounds that it was a "prevailing party" and therefore entitled to reasonable attorney's fees under 42 U.S.C. § 1988. The district court denied the motion, reaffirming its decision on mootness and finding that Federation was not entitled to attorney's fees because it was not a "prevailing party" under the statute, as interpreted by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't. of Health and Human Res.*, 532 U.S. 598, 600 (2001). Federation now appeals the district court's rulings on both mootness and attorney's fees.

## II. Analysis

### A. Mootness

Whether a case has been rendered moot is a question of law that we review *de novo. Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Under Article III of the Constitution, as interpreted by the courts, cases that do not involve "actual, ongoing controversies" are moot and must be dismissed for lack of jurisdiction. *Stotts v. Cmty. Unit Sch. Dist. No. 1,* 230 F.3d 989, 990-91 (7th Cir. 2000). A question of mootness arises when, as here, a challenged ordinance is repealed during the pendency of litigation, and a plaintiff seeks only prospective relief. *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995).

We begin with Federation's argument that this case is not moot because in addition to declaratory and injunctive relief, it sought damages in its complaint. We recog-

nize that a defendant's change in conduct cannot render a case moot so long as the plaintiff makes a claim for damages. *Buckhannon*, 532 U.S. at 608-09. However, no damage claim remains in this case. In the original district court ruling, which granted Federation's motion for summary judgment, the court explicitly denied Federation's claim for damages, holding that no evidence had been submitted to support the claim. *See Federation*, 12 F. Supp. 2d at 854. This was a final ruling by the district court, which Federation did not appeal. "Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." *Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996). Thus, Federation is precluded from resurrecting its damages claim and at this stage may only seek injunctive and declaratory relief.

Federation next argues that this case presents a live controversy because, though the City has repealed the challenged ordinance, the City remains free to reenact it at any time. In support of this argument, Federation cites the general principle that a defendant's voluntarily cessation of challenged conduct will not render a case moot because the defendant remains "free to return to his old ways." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953).

We do not dispute that this proposition is the appropriate standard for cases between private parties, but this is not the view we have taken toward acts of voluntary cessation by government officials. Rather, "[w]hen the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991); *see also Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("We note additionally that cessation of the allegedly illegal conduct by government

officials has been treated with more solicitude by the courts than similar action by private parties.") (citing 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.7, at 353 (2d ed. 1984). To adopt Federation's view that mere repeal is insufficient to moot a case would essentially put this court in the position of presuming that the City has acted in bad faith—harboring hidden motives to reenact the statute after we have dismissed the case—something we ordinarily do not presume. *See generally N.E. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 677 (1993) (O'Connor, J., dissenting); Michael Ashton, Note, *Recovering Attorney's Fees with the Voluntary Cessation Exception to Mootness Doctrine After Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 2002 WIS. L. REV. 965.

Rather than presuming bad faith, we have repeatedly held that the complete repeal of a challenged law renders a case moot, unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar. *See, e.g.*, *Rembert*, 62 F.3d at 940; *Thomas v. Fielder*, 884 F.2d 990, 995 (7th Cir. 1989).

This rule does not, as Federation suggests, conflict with Supreme Court precedent on the issue. In a string of cases, the Court has upheld the general rule that repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474 (1990); *Mass. v. Oakes*, 491 U.S. 576, 582-83 (1989); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982); *Kremens v. Bartley*, 431 U.S. 119, 128-29 (1977); *Diffenderfer v. Cent. Baptist Church, Inc.*, 404 U.S. 412, 415 (1972).

Only in cases where there is evidence that the repeal was not genuine has the Court refused to hold the case

moot. For instance, in *City of Mesquite v. Aladdin's Castle*, though the City had repealed the challenged ordinance, the Court declined to find the case moot because the City had announced to the Court its intention to reenact the challenged provision if the case was dismissed. 455 U.S. 283, 289 n.11 (1982).[5] Similarly, in *Northeastern Florida*, the Court held that repeal did not moot the case because the City had already replaced the repealed ordinance with one that was substantially similar, causing the Court to note that "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so." 508 U.S. 656, 662 (1993).[6]

Therefore, we, along with all the circuits to address the issue, have interpreted Supreme Court precedent to support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the

---

[5] We recognize that some language in the *Aladdin's Castle* majority opinion perhaps suggests that mere repeal of a challenged statute does *not* moot a case. But in light of both previous and subsequent cases, we find this language to be dicta and therefore not controlling. Further supporting this conclusion is Justice White's *Aladdin's Castle* concurrence wherein he noted that the City of Mesquite's announced intention to reenact the challenged ordinance distinguished *Aladdin's Castle* from prior cases where the Court had held that repeal moots a statutory challenge. *Id.* at 296 n. (White, J., concurring in part, dissenting in part). *Aladdin's Castle*, therefore, was reconcilable with those prior cases.

[6] Consistent with our belief that *Northeastern Florida* and *Aladdin's Castle* represent only an exception to the general rule, the *Northeastern Florida* majority noted that what separated its holding from those in *Diffenderfer* and similar cases was that in the prior cases there was "no basis for concluding that the challenged conduct was being repeated," whereas in *Northeastern Florida* the City had already reenacted a similar statute. *Id.* at 662 n.3.

City plans to or already has reenacted the challenged law or one substantially similar.[7] Consequently, the issue

---

[7] *See Citizens for Responsible Gov't v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("In general, the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior—here the threat of prosecution under one of the repealed sections—could not reasonably be expected to recur.") (quotations omitted); *D.H.L. Assoc. v. O'Gorman*, 199 F.3d 50, 55 (1st Cir. 1999) (finding that *Diffenderfer* established the general rule that repeal of a statute moots a case, and that *Aladdin's Castle* and *Northeastern Florida* created an exception to this rule that only applied "when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case"); *Nat'l Black Police Assoc. v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) ("Although voluntary cessation analysis applies where a challenge to government action is mooted by passage of legislation, the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted."); *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997) (holding that amendment to the challenged statute mooted the claim when the state had expressed no intention to reenact the prior law) ; *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) ("As a general rule, if a challenged law is repealed or expires, the case becomes moot" except where "it is virtually certain that the repealed law will be reenacted."); *Assoc. Gen. Contractors of Conn., Inc. v. City of New Haven*, 41 F.3d 62, 66 (2d Cir. 1994) (holding the *Aladdin's Castle* exception to the mootness rule inapplicable because the City of New Haven had not reenacted the challenged legislation and the court did not foresee that it would); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5, at 139 (3d. ed. 1999) (concluding after reviewing relevant Supreme Court cases that "[t]he difficulty is determining why in some situations a legislative repeal is deemed to make a case moot, yet in other cases it does not . . . . The key appears to be

(continued...)

here is whether there is any evidence that the City of Chicago's repeal was disingenuous; that is, evidence that the City will reenact the challenged ordinance or one substantially similar.

Federation essentially makes two arguments on this front, neither of which we find persuasive. First, Federation contends that the City has engaged in a disingenuous game of "constitutional cat and mouse." *Thomas*, 884 F.2d at 995. According to Federation, the fact that the City twice amended this ordinance and finally repealed it, demonstrates the City's determination to evade constitutional limits on its power and therefore is evidence that it will reenact the ordinance if we dismiss this case. We disagree with Federation's characterization of the City's actions as disingenuous; rather, they just as likely reveal the City's good-faith attempts to initially maintain an effective ordinance that complies with the Constitution, and then its desire to avoid substantial litigation costs by removing a potentially unconstitutional law from the books. For instance, the second amendment to the ordinance, which removed various exceptions, came partially in response to our decision that one of the exceptions was preempted by the FCLAA and partially in response to the Supreme Court decision in G*reater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173 (1999), which moved the City to question the constitutionality of an exception-laden ordinance. We can hardly fault the City for its attempts to craft an ordinance that passes constitutional muster and complies with judicial decisions. *Thomas*, 884 F.2d at 995. Finally, the City candidly admits that the *Lorillard* decision persuaded it to repeal

---

[7] (...continued)
that cases will not be dismissed as moot if the Court believes that there is a likelihood of reenactment of a substantially similar law if the lawsuit is dismissed").

the ordinance because of the risk of losing in the litiga-
tion. We find that the City's actions over the course of this
litigation do not give rise to an expectation that it will
reenact the challenged ordinance.

Second, Federation argues that the proposal of another
sign-restricting ordinance in the City Council creates a
reasonable expectation that the City will return to its old
ways. While the record reveals that another law has been
proposed, it is of a significantly different character than
the repealed ordinance. Unlike the repealed ordinance,
which restricted only cigarette and alcohol advertise-
ments, the newly proposed law does not regulate on the
basis of content, but rather would allow the City Council
to create sign-free districts where no advertising signs
could be displayed at all, whether they be for alcohol,
cigarettes, soft drinks, or whatever. The majority opinion in
*Northeastern Florida* made it clear that where a chal-
lenged statute is replaced by one that would create a
"substantially different controversy," then the new statute
provides "no basis for concluding that the challenged
conduct [will be] repeated." *Northeastern Florida*, 508
U.S. at 662 n.3. The proposed ordinance, a content-neutral
prohibition, would create a substantially different con-
troversy than the repealed ordinance, which was funda-
mentally a content-based prohibition.

Moreover, the fact that this is only a proposed ordinance
is not insignificant. We have no way of knowing the likeli-
hood that this ordinance will actually be enacted. Therefore,
it presents a quite different case than either *Aladdin's
Castle*—where the City explicitly informed the Court that
it would reenact the repealed law, 455 U.S. at 289 &
n.11—or *Northeastern Florida*—where the City had al-
ready enacted a substantially similar ordinance, 508 U.S.
at 662.

Because the City has repealed the challenged ordinance
and because we find no evidence in the record creating a

reasonable expectation that the City will reenact that ordinance, we affirm the district court's holding that this case is moot.

## B.  Attorney's Fees

Federation claims attorney's fees under 42 U.S.C. § 1988, which provides to "the prevailing party . . . a reasonable attorney's fee." The district court below held that Federation was not a "prevailing party" under the statute and therefore denied Federation's claim. Although the decision to award attorney's fees under § 1988 lies within the district court's discretion, when, as here, the district court's denial of an attorney's fee award rests on the application of a principle of law, our review is *de novo*. *Jaffee v. Redmond*, 142 F.3d 409, 412-13 (7th Cir. 1998).

In *Buckhannon*, the Supreme Court rejected as a basis for awarding attorney's fees the "catalyst theory," which deemed the "plaintiff a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 600-01. Instead, the Court held that the term "prevailing party," as used in various federal statutes,[8] includes only those parties who have obtained a "judicially sanctioned change" in the legal relationship of the parties. *Id*. at 605. As examples of the sort of "judicially sanctioned change" required, the Court cited an enforceable judgement on the merits or a court-ordered consent decree. *Id*. at 602.

---

[8]  The *Buckhannon* case involved the term "prevailing party" as used in the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2) and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205. But the Court made abundantly clear that its ruling would apply as well to the term as used in the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. *Buckhannon*, 532 U.S. at 602-03 & n.4.

Federation has not obtained an enforceable judgment on the merits, a court-ordered consent decree, or anything else that might be classified as "some relief by the court." *Id.* at 603. Thus, *Buckhannon* mandates we find that Federation is not a "prevailing party" in this litigation.

Attempting to avoid the application of *Buckhannon*, Federation argues that its position in this case has been marked with a sufficient "judicial imprimatur" to qualify it as a prevailing party. *Id.* at 605. Federation first points to the fact that the district court originally granted its motion for summary judgment. But we reversed the core holding of that decision. *Federation*, 189 F.3d at 639-40. Obtaining a favorable judgment that is reversed on appeal does not entitle a plaintiff to prevailing-party status. Federation notes that we affirmed a portion of the original district court decision. *Id.* at 640. But our holding only affirmed the small portion of the decision that found that an exception in the ordinance was preempted by the FCLAA. The relief sought by Federation was far broader than that which we upheld. It sought not the elimination of merely this exception, but rather the elimination of the entire ordinance. In fact, our holding that the generic advertising exception was preempted actually did not provide Federation any relief at all; rather, it further limited Federation's ability to advertise. Therefore, the fact that we affirmed this portion of the original district court decision certainly does not make Federation a prevailing party. *See generally Cady v. City of Chicago*, 43 F.3d 326, 329 (7th Cir. 1994) (holding that even under the catalyst theory, a plaintiff is not a prevailing party unless he obtains the relief sought or at least relief that is directly beneficial to him).

Federation also tries to characterize itself as a prevailing party based on the fact that the City's repeal of the ordinance was not voluntary. According to Federation, repeal was brought about by the combination of the Su-

preme Court's decision in *Lorillard* and its own motion for summary judgment that was pending when *Lorillard* was decided. Assuming for the sake of argument that Federation's characterization of the City's reasons for repealing its ordinance is correct, *Buckhannon* still would prevent us from finding that Federation is a prevailing party. For even if we accept that *Lorillard* controls the merits of Federation's claim, neither Federation nor the City were parties to that case. In other words, *Lorillard* may support Federation's position, but it was not a judgment that changed the legal relationship between the parties in *this* case—and that is what *Buckhannon* requires. *See Buckhannon*, 532 U.S. at 605.

Nor does the fact that Federation had a summary judgment motion pending provide the necessary judicially sanctioned change. Even assuming that after *Lorillard*, the district court would have granted Federation's motion had the City not repealed its ordinance, the fact remains that no such ruling was made and thus no judicial relief was awarded to Federation. Federation lays blame on the district court for not ruling on the summary judgment motion before the City could repeal its ordinance, but we see no error in the judge not ruling as quickly as Federation might have liked, especially in light of the fact that Federation did not move for expedited review.

The fact remains that Federation did not obtain a "judicially sanctioned change in the legal relationship of the parties," and thus under *Buckhannon*, it cannot be deemed a prevailing party. Consequently, we affirm the district court's denial of Federation's claim for attorney's fees.

### III. Conclusion

For the foregoing reasons, the district court's decision that this case is moot and that Federation is not entitled to attorney's fees is AFFIRMED.

No. 02-1909 15

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*