William G. ROCKWOOD, d/b/a Kerry's Kwik Stop, and David M. Rockwood, d/b/a Old North End Variety, Plaintiffs,

v.

CITY OF BURLINGTON, VERMONT, Defendant.

No. 2:98–CV–223.

United States District Court, D. Vermont.

Sept. 21, 1998.

---

4. Based on the invoice dates set forth on exhibit 12.

Amy Elise Sylvester, Sylvester & Maley, Inc., Burlington, VT, for plaintiffs.

John Thomas Leddy, Joseph Edward McNeil, McNeil, Leddy & Sheahan, P.C., Burlington, VT, Jessica A. Oski, City of Burlington, Burlington, VT, for defendant.

Douglas J. Wolinsky, Shireen Soraya T. Hart, Saxer, Anderson, Wolinsky & Sunshine, Burlington, VT, for American Civil Liberties Foundation of Vermont, Inc., movant.

Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, for movants American Lung Association, American Lung Association of Vermont, American Heart Association, Public Citizen, National Center for Tobacco–Free Kids, Vermont Public Interest Research Group, Vermont Childrens' Forum, American Academy of Pediatrics—Vermont Chapter, Vermont Academy of Family Physicians.

*OPINION AND ORDER*

SESSIONS, District Judge.

In this action for declaratory and injunctive relief, Plaintiffs William G. Rockwood and David M. Rockwood ("the Rockwoods") seek to enjoin enforcement of the city of

Burlington, Vermont's ("City's") recently enacted "Youth Access to Tobacco Ordinance," ("Ordinance") which regulates the advertising of tobacco products. Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the hearing on Plaintiffs' motion for temporary restraining order and preliminary injunction was consolidated with a trial on the merits. The case was tried to the Court on July 16 and 17, 1998. Amicus curiae briefs have been filed by the American Civil Liberties Union of Vermont in support of the Rockwoods, and by the American Lung Association, the American Lung Association of Vermont, the American Heart Association, Public Citizen, the National Center for Tobacco–Free Kids, Vermont Public Interest Research Group, the Vermont Children's Forum, the Vermont chapter of the American Academy of Pediatrics, and the Vermont Academy of Family Physicians in support of the City.

The Rockwoods assert that the Ordinance abridges commercial speech in violation of the First Amendment to the United States Constitution, that the Ordinance is preempted by federal law, and that the City lacks the regulatory authority to enact such a measure. For the reasons that follow, the Court finds that Sections 21–62 and 21–63 of the Code of Ordinances of the City of Burlington are invalid, and enjoins the City from enforcing these provisions of the Youth Access to Tobacco Ordinance. Section 21–64 is a constitutional and reasonable exercise of the City's police power, and is therefore valid.

## FINDINGS OF FACT

1. This action is brought under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201–02, and the Court has jurisdiction under 28 U.S.C. § 1331.

2. Plaintiff William G. Rockwood is the owner of Kerry's Kwik Stop, a convenience store located at 249 St. Paul Street in the City of Burlington, Vermont.

3. Plaintiff David M. Rockwood and his wife are the owners of Old North End Variety, a convenience store located at 142 North Winooski Avenue in the City of Burlington, Vermont.

4. The Rockwoods are licensed by the City to sell cigarettes and tobacco products, and they sell cigarettes and tobacco products in their convenience stores. The cigarette packages they sell are labeled in conformity with the provisions of the Federal Cigarette Labeling and Advertising Act.

5. The City of Burlington, Vermont, is a political subdivision of the State of Vermont, located in Chittenden County, Vermont.

6. The State of Vermont prohibits the sale, furnishing, purchase or possession of tobacco products to or by any person younger than eighteen years of age. Vt.Stat.Ann. tit. 7, § 1003(a), 1005(a) (Supp .1997).

7. The Vermont State legislature has found that the incidence of daily smoking by minors has been increasing, and that as of 1995, 38 per cent of Vermont high school students were smoking cigarettes. 1997 Vt. Acts & Resolves Act 58, § 1(b).

8. On April 13, 1998, the City, operating through its City Council, after public comment and discussion, adopted an Ordinance entitled "Youth Access to Tobacco." In conjunction with the passage of the Ordinance, the City Council adopted a "Resolution Relating to Tobacco Advertising" ("the Resolution").

9. The Ordinance was scheduled to go into effect July 1, 1998; however, the parties have agreed to a stay of enforcement until no later than September 21, 1998.

10. The stated purpose of the Ordinance is to decrease the illegal use of tobacco products by minors.

11. The Ordinance was sponsored by the City Board of Health to send a clear and consistent public health message to youths about the health risks of tobacco use.

12. In urging the passage of the Ordinance, one of the City Council members referred to the measure as "first and foremost a public health issue." Another Council member associated the regulation of tobacco advertising with blocking the promotion of nicotine and reducing nicotine addiction.

13. The Ordinance prohibits point-of-sale advertising of tobacco products by any means other than a maximum of two black and

white, text only, 8½ by 14 inch signs ("Tombstone Signs") in or on any retail establishment where tobacco products are offered for sale. The text may not exceed one inch in height, and may include only the brand name, description of the product, tar and nicotine content, price, and any warnings required by federal law. The Ordinance makes it unlawful for City retailers to use any promotional items inside or outside their stores, such as clocks, grocery dividers, display racks, ashtrays, trash cans, catalogues, uniforms, T-shirts, or other clothing.

14. The Ordinance prohibits any person from publicly displaying any sign or other form of textual or graphic expression that advertises or promotes the use of any tobacco product within one thousand feet of a school property. The Ordinance excepts from this prohibition a licensed retailer's sign if it is not visible from the outside of the licensed premises; any signs on tobacco product packaging or commercial vehicles being used to transport tobacco; signs on personal apparel; and signs in or on books, magazines, newspapers or similar publications.

15. The Ordinance prohibits the distribution of free samples of tobacco products, or of promotional materials, or of coupons redeemable for tobacco products or promotional materials.

16. The Ordinance prohibits any manufacturer, distributor, or retailer from sponsoring any athletic, musical, artistic or other social or cultural event using a tobacco product brand name, logo, motto, or image.

17. The Ordinance prohibits self-service displays of cigarettes and tobacco products by any licensed retailer.

18. Violation of the Ordinance exposes the violator to penalties under the City Code of Ordinances and Vermont Statutes Annotated, tit. 24, § 1974(a) (1992 and Supp.1997).

19. In connection with the Youth Access to Tobacco Ordinance, the City Council found that the City has a substantial and important interest in reducing the illegal use of tobacco products by persons under the age of eighteen; that certain types of advertising have particular appeal to the young; that pervasive cigarette advertising directed to young people increases the risk of their use of tobacco; that regulation of tobacco advertising can reasonably be expected to decrease the illegal use of tobacco products by minors; and that prohibition of self-service displays can reasonably be expected to decrease the illegal purchase of tobacco products by minors.

20. Sales of cigarettes and tobacco products at Kerry's Kwik Stop amount to approximately $165,470 annually. Sales of cigarettes and tobacco products at Old North End Variety amount to approximately $100,110 annually.

21. Old North End Variety is located within one thousand feet of the following school properties: St. Joseph's School, Lawrence Barnes School, H.O. Wheeler School, Community College of Vermont, O'Brien's School of Cosmetology and Hairdressing, and the Ohavi Zedek Synagogue School.

22. The sale of cigarettes and tobacco products generates collateral sales of other items offered for sale in the Rockwoods' convenience stores.

23. The Rockwoods display advertisements and promotional materials for tobacco products both inside and outside their stores. The Rockwoods have contracts with suppliers of tobacco products for promotional allowances, which allow them to pass on to their customers competitive price breaks. The use of such promotional allowances is an important part of their business.

24. William Rockwood receives from suppliers of tobacco products approximately $1,200 to $1,500 per quarter tied to the promotional display of tobacco products. David Rockwood receives from suppliers of tobacco products approximately $4,000 annually tied to the promotional display of tobacco products. Under the Youth Access to Tobacco Ordinance they will lose these allowances, and will experience a decrease in sales volume.

25. Under the Youth Access to Tobacco Ordinance, the Rockwoods will be prevented from engaging in any competitive advertising of tobacco products. They will have to remove from their stores the tobacco product

promotional items currently in use, and will have to replace them at their own expense. They will have to reconfigure the area behind their cashiers' counters to relocate cigarettes and tobacco products to that area at their own expense.

26. Under the Youth Access to Tobacco Ordinance, David Rockwood will be prohibited from posting any signs visible from the exterior of his store that advertise the sale of tobacco products. Many other convenience stores in Burlington are located within one thousand feet of a school property, and will be similarly affected by the Ordinance.

## CONCLUSIONS OF LAW

### I. *Regulatory Authority*

■■■ The Rockwoods claim that the Ordinance is invalid because the City lacked the authority to regulate. Subject to constitutional limitations, a legislative body is empowered to enact laws for the public health, safety and welfare. *See Sowma v. Parker,* 112 Vt. 241, 249, 22 A.2d 513, 517 (1941). *See also SBC Enterprises, Inc. v. City of South Burlington,* 892 F.Supp. 578, 582 (D.Vt.1995). Vermont municipalities have only those powers and functions specifically authorized by the legislature, and "such additional functions as may be incident, subordinate or necessary to the exercise thereof." *State v. Yorkey,* 163 Vt. 355, 358, 657 A.2d 1079, 1080 (1995); *Hinesburg Sand & Gravel Co. v. Town of Hinesburg,* 135 Vt. 484, 485–86, 380 A.2d 64, 66 (1977). *See also Central Vt. Quality Services, Inc. v. City of Rutland, Vt.,* 780 F.Supp. 218, 220 (D.Vt.1991). In the exercise of its police powers, the state has the authority to prevent or abate nuisances, again subject to constitutional limitations. *Napro Dev. Corp. v. Town of Berlin,* 135 Vt. 353, 361, 376 A.2d 342 (1977). A city has the power: "[t]o define what constitutes a public nuisance, and to provide procedures and take action for its abatement or removal as the public health, safety or welfare may require." Vt.Stat.Ann. tit. 24, § 2291(14) (1992). The City has deemed the illegal use of tobacco products by minors a public nuisance, and

has enacted its Ordinance in an effort to reduce this activity. If there is no constitutional objection to the City's undertaking, it has the police power to do so.

### II. *Preemption*

The Rockwoods contend that the Ordinance is preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"), a comprehensive federal statutory scheme enacted to regulate cigarette labeling and advertising. 15 U.S.C.A. §§ 1331–1341 (1998).

The Supreme Clause of the United States Constitution provides that the laws of the United States, "shall be the supreme Law of the Land, ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Any state or local[1] law, "however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 2, 11, 6 L.Ed. 23 (1824)).

■■■ Any consideration of whether a state or local law has been preempted must begin "with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Congress may preempt state authority to legislate in a particular area by stating so expressly in the language of the statute; or preemption may be implied if the state law actually conflicts with federal law, or if federal law completely occupies the legislative field. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■■ The FCLAA contains an express statement of preemption: "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any

---

1. Supremacy Clause analysis of local ordinances is the same as for statewide laws. *Hillsborough County, Fla. v. Automated Med. Lab., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).[2] The United States Supreme Court has considered the preemptive scope of this provision, and concluded that it is governed entirely by its express language. *Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608. Any matters beyond the reach of the express language of the provision are not preempted. *Id. See also Vango Media, Inc. v. City of New York*, 34 F.3d 68, 72 (1994). Therefore, only if the City has enacted a "requirement or prohibition" "based on smoking and health" "with respect to the advertising or promotion of any cigarettes," is its ordinance preempted.

The City's Youth Access to Tobacco ordinance is without question a set of requirements and prohibitions within the meaning of Section 1334(b). *See Vango Media*, 34 F.3d at 72 (citing *Cipollone*, 505 U.S. at 521, 535, 548, 112 S.Ct. 2608). *See also Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 70 (1st Cir.1997). Where the parties and the amici differ is on the questions of whether the Ordinance is "based on smoking and health," and whether the Ordinance is imposed "with respect to the advertising or promotion of cigarettes."

### A. *Based on Smoking and Health*

■ In Vermont, it is illegal for persons under the age of eighteen to possess or purchase tobacco products. Vt.Stat.Ann. tit. 7, § 1005 (Supp.1997). In 1991, the General Assembly enacted Act 70, "An Act Relating to Protecting the Health of Minors Through a Comprehensive Limitation of Access to Tobacco Products by Minors." Among other provisions, the Act required the annual licensing of tobacco vendors, restricted the location of tobacco vending machines, and prohibited the sale of tobacco products to minors. 1991 Vt.Acts & Resolves Act 70, § 2, codified at Vt.Stat.Ann. tit. 7, § 1002,

1003, 1007.[3] The legislature specifically found:

that tobacco is an addictive substance, and that products containing tobacco are harmful to human health .... the majority of the 350,000 Americans who die each year from tobacco use became addicted to nicotine as adolescent minors. Adolescent addiction to tobacco products can cause health complications in later life which magnify the high cost of health care and reduce worker productivity.

Act 70, § 1. Regulation of tobacco products is currently found in Title Seven of Vermont Statutes Annotated. Section 1 of Title Seven provides that "[t]his title is based on the taxing power and the police power of the state, and is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state." Vt.Stat. Ann. tit. 7, § 1 (1988). Earlier statutory prohibitions against furnishing tobacco to youth were classified as offenses against public health. Vermont Statutes Revision of 1947, tit. 41, § 8508 (1947); Public Laws of Vermont of 1933, tit. 37, § 8644, 8645 (1934).[4]

The stated purpose of the City's Youth Access to Tobacco Ordinance is "to decrease the illegal use of tobacco products by minors." Code of Ordinances, chapter 21, Art. IV, § 21–60. The City Council's Ordinance Committee, to which the Ordinance was referred for consideration prior to its adoption, received extensive public comment and documentation concerning the connection between tobacco advertising and promotion and youth susceptibility to tobacco use. Montroll Aff. and Ex. A (paper 11). Neither the Ordinance's findings nor the City Council's Resolution Relating to Tobacco, adopted simultaneously with the Ordinance, make any mention of health concerns related to youth use of tobacco. However, examination of the videotapes and transcripts of the Bur-

---

**2.** An earlier version of Section 1334(b) preempted statements only. In 1969 the statute was amended; the amended statute barred States from imposing any requirements or prohibitions. *Cipollone*, 505 U .S. at 520, 112 S.Ct. 2608 (plurality op.).

**3.** The sections were amended in 1997. 1997 Vt.Acts & Resolves Act 58, §§ 2, 3, 6.

**4.** Also regulated as an offense against public. health was the advertisement of tobacco in public places. Public Laws of Vermont of 1933, tit. 37, § 8647 (1934); Vermont Statutes of 1947, tit. 41, § 8512 (1947) (repealed 1979).

lington City Council Meeting held on April 13, 1998, and of the Public Records of the City Council, the Ordinance Committee and the City Board of Health regarding the Ordinance, reveal that health concerns were an important component of the City Councilors' concerns and of the comment received. City Council Meeting Apr. 13, 1998 Tr. at 60, 64, 69, 73, 76, 81 (paper 34, ex. A). *See also* Public Records of the City of Burlington Regarding the Youth Access to Tobacco Ordinance: Communications from City Board of Health, Vermont Department of Health; Minutes from Ordinance Committee meetings; Communication from the FDA; C. Everett Koop, *A Parting Shot at Tobacco*, 262 JAMA 2894–95 (Nov. 24, 1989) (paper 32).

It strains credulity to adopt the rationale that the City's Ordinance is unrelated to smoking and health, merely because the City has stressed its purpose of reducing illegal activity by minors. Clearly the dominant reason that lawmakers in Vermont as elsewhere seek to restrict the use of tobacco products by minors is the grave concern that addiction to nicotine in their youth will have long-term health consequences for them.[5]

In an implied preemption case, the United States Supreme Court held that a state law with more than one purpose would be preempted if one of the purposes interfered with the federal regulatory scheme. *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 105–07, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). The Court noted: "[W]hen considering the purpose of a challenged statute, this Court is not bound by '[t]he name, description or characterization given it by the legislature or the courts of the State,' but will determine for itself the practical impact of the law." *Id.* at 106, 112 S.Ct. 2374 (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)) (quoting *Lacoste v. Department of Conservation*, 263 U.S. 545, 550, 44 S.Ct. 186, 68 L.Ed. 437 (1924)). In *Vango Media*, the

Second Circuit applied *Gade's* holding to express preemption under Section 1334(b), and held that both the local law's purpose and its actual effect must be considered in determining whether the state law is preempted. 34 F.3d at 73. As the court in *Philip Morris v. Harshbarger* stated, "the relevant inquiry focuses not upon any relation between advertising and the *motivation* behind a state law, but upon the law itself," and the effect of the regulatory scheme. 122 F.3d at 76–77 (emphasis in original).

In *Federation of Advertising Indus. Representatives, Inc. v. City of Chicago*, 12 F.Supp.2d 844 (N.D.Ill.1998), the district court rejected the City's argument that its ordinance regulating outdoor advertising of cigarettes was not preempted because its purpose was to prevent the illegal purchase or sale of cigarettes, stating that "the reason for such sales having been made illegal in the first place was the perceived threat to the health of . . . minors." *Id.* at 852. In *Philip Morris v. Harshbarger*, the Court summarily disposed of an argument that a state regulation related to tobacco products could escape preemption because it was based on a duty to obey the law rather than on smoking and health:

we think such an argument impermissibly raises the level of generality of the inquiry. The logical extension of this argument would be that all obligations stemming from state positive-enactments are predicated on the "general duty" to "abide by state law," thus bringing every such requirement outside the scope of the preemption clause even if it squarely involved otherwise preempted matters.

122 F.3d at 71.

Because laws restricting youth access to tobacco products are currently and have historically been enacted as public health measures in Vermont, because concerns over the health consequences of youth smoking prompted the enactment of the Ordinance,

---

**5.** The FDA Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents, which contained provisions similar if not identical to the Ordinance, stated: "[t]hese regulations will address the serious public health problems caused by cigarettes and smokeless tobacco products. They will reduce children's and adolescents' easy access to cigarettes and smokeless tobacco and will significantly decrease the amount of positive imagery that makes these products so appealing to that age group." 61 Fed.Reg. 44396, 44396 (1996).

and because the Ordinance is designed to restrict youth access to tobacco in order to reduce youth addiction to nicotine in an effort to avoid its ruinous effect on their health as adults, this Court concludes that the Ordinance is based on smoking and health.

### B. *With Respect to the Advertising or Promotion of any Cigarettes*

The City asserts that its Ordinance does not regulate cigarette advertising within the meaning of Section 1334(b), because it regulates the location and format of cigarette advertising, not its content, and does not limit the ability of cigarette manufacturers and vendors to advertise generally in the media. The City urges this Court to adopt the Fourth Circuit's reasoning in *Penn Advertising of Baltimore, Inc. v. Mayor and City Council,* 63 F.3d 1318 (4th Cir.1995), *vacated and remanded,* 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996), *readopted,* 101 F.3d 332 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 715 (1997). *Penn Advertising* involved a city ordinance prohibiting cigarette advertising on billboards located in certain areas. The court held that the ordinance was not preempted by the FCLAA, because it limited only the location of signs that advertise cigarettes, and not their content. "The regulation simply restricts the location of cigarette-advertising signs, irrespective of the nature of the message communicated." *Id.* at 1324. The first obvious distinction is that the City's Ordinance quite specifically prescribes the content of tobacco product advertising signs, as well as limiting their location. The text of the signs may include only the brand name, description of the product, tar and nicotine content, price, and any warnings required by federal law. Furthermore, the dichotomy identified in *Penn Advertising,* between restrictions on content (preempted) and restrictions on location (not preempted), finds no support in the text of the preemption provision itself. Its plain language makes no distinction between requirements or prohibitions of specific advertising language and requirements or prohibitions of specific advertising locations; it preempts any requirements or prohibitions with respect to advertising or promotion of cigarettes that are based on smoking and health.

The Fourth Circuit panel took *Cipollone*'s analysis of whether certain tort claims were based on an underlying duty involving smoking and health and proceeded to look for a legal duty involving smoking and health underlying its billboard advertising law. It failed to find such a legal duty, but also failed to address whether the law itself was a requirement or prohibition based on smoking and health. Furthermore, this portion of the *Cipollone* opinion failed to command a majority of the Court. Respectfully, the Court declines to adopt *Penn Advertising*'s reasoning.

The *Cipollone* four member plurality opinion authored by Justice Stevens concluded that when Congress amended Section 1334(b) in 1969, it broadened the preemptive scope of the FCLAA to bar not only statements *in* the advertising, but requirements or prohibitions *with respect to* advertising. 505 U.S. at 520, 112 S.Ct. 2608 (emphasis supplied). Justice Scalia's opinion concurring in part and dissenting in part, in which Justice Thomas joined, interpreted "with respect to . . . advertising" more broadly than the plurality. *Id.* at 554, 112 S.Ct. 2608. Thus, six members of the *Cipollone* Court agreed that the plain language of the phrase is broad. *See also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 489 n. 9, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (statute in *Cipollone* clearly intended to have a broader preemptive effect than its predecessor); *Philip Morris v. Harshbarger,* 122 F.3d at 72; *Vango Media,* 34 F.3d at 74.

In *Vango Media,* the Second Circuit held that the FCLAA preempted an ordinance which required that one public health message be displayed for every four tobacco advertisements. The court analyzed the words "with respect to," and ruled that the law implicated Section 1334(b), "even if . . . only at the edges," because it directly affected advertisers and promoters and "impose[d] conditions on [the] display of cigarette advertisements." *Id.* at 74–75. Although the City's Ordinance contains very different requirements than the ordinance in *Vango Media,* the application of Section 1334(b) is no

different: if the Ordinance "treads on the area of tobacco advertising," affects advertisers and promoters, and imposes conditions on the display of tobacco advertisements, under the broad language of "with respect to the advertising or promotion of cigarettes," the Ordinance is preempted.

### 1. Sec. 21–62: Restrictions on tobacco advertising and product give-aways

■ Section 21–62(a) provides that all indoor and outdoor tobacco advertisements be in black and white, that point-of-sale advertising be by means of "tombstone" signs,[6] and that no more than two tombstone signs in or on a retail establishment are permitted. Section 21–62(b) prohibits publicly visible tobacco advertising of any sort within one thousand feet of a school property. Section 21–62(c) prohibits the distribution of free samples or coupons for the purposes of promoting tobacco products. Section 21–62's measures impose conditions on the display of tobacco advertisements, they directly affect the advertisement and promotion of cigarettes, and consequently, however well-advised the measures are, they are preempted by the FCLAA. *See Philip Morris v. Harshbarger,* 122 F.3d at 76 (law mandating changes or additions to the content of cigarette advertisements would be quintessential state requirement with respect to advertising and promotion); *Chiglo v. City of Preston, Minn.,* 909 F.Supp. 675, 678 (D.Minn.1995).

### 2. Sec. 21–63: Sponsorship of events using product names prohibited

■ Section 21–63 prohibits sponsorship of any athletic, musical, artistic or other social or cultural event using the brand name, logo, motto, or any other indicia of a product identification identical or similar to those used for tobacco products. The provision does not prohibit tobacco manufacturers, distributors or retailers from sponsoring such events. Section 21–63's prohibition, like the restrictions in Section 21–62, directly affect the advertisement and promotion of ciga-

rettes, and not only limit but completely prohibit the display of tobacco advertisements. Section 21–63 is likewise preempted.

### 3. Sec. 21–64: Self-service tobacco sales displays prohibited

■ Section 21–64 bans the display or storage of tobacco products where those products are accessible to consumers without sales assistance. On its face, the provision seems unrelated to cigarette advertising or promotion. This provision bears more resemblance to laws which address access to or availability of tobacco products, such as prohibitions on the sale of tobacco to minors, or on smoking in public places, rather than measures which attempt to affect the desire for cigarettes by regulating tobacco advertising. A state or local government retains its traditional police powers to regulate smoking, and access to and availability of cigarettes. *Vango Media,* 34 F.3d at 74. *See also Brown & Williamson Tobacco Corp. v. Food & Drug Admin.,* 153 F.3d 155, 174 (4th Cir.1998). Section 21–64 is therefore not preempted by the FCLAA.

### III. First Amendment Protection of Commercial Speech

■ Even were the greater part of the provisions of the Ordinance not preempted by the FCLAA, the Ordinance would have to withstand First Amendment scrutiny. As discussed below, Sections 21–62 and 21–63 cannot survive the experience. Section 21–64 does not constitute expression, however, is not protected by the First Amendment, and is a valid exercise of the City's police power.

■ First Amendment jurisprudence is based on the content of speech or of expressive conduct. *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 420, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (Stevens, J. concurring). Where the government is regulating neither speech nor an incidental nonexpressive effect of speech, the First Amendment is not implicated. *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 708, 106 S.Ct. 3172, 92 L.Ed.2d 568

**6.** A "Tombstone Sign" must be no larger than 8½ × 14 inches, may display only the brand name, description, tar and nicotine content, federal warning, and price of the tobacco product being

advertised in print no larger than one inch, and may not contain pictures, figures, logos or anything else. § 21–62(a)(2)(A).

(1986) (O'Connor, J. concurring). Because there neither speech nor expressive conduct is involved in a ban on self-service displays of tobacco products, Section 21–64 need not receive First Amendment scrutiny.[7]

██ Commercial speech, speech which does "no more than propose a commercial transaction," has enjoyed First Amendment protection since the United States Supreme Court's decision in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).[8] A four-part analysis for determining whether a governmental restriction on commercial speech will be upheld against a First Amendment challenge was set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980):(1) whether the expression concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether the regulation is no more extensive than is necessary to serve that interest. *See also International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 72 (2d Cir.1996). The party seeking to uphold a restriction on commercial speech, in this case, the City, bears the burden of justifying it. *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)).

### A. *Lawful Activity and Not Deceptive*

Tobacco advertising proposes that people buy a product which is lawful for adults to possess and unlawful for minors to possess. It is argued that tobacco companies are using advertising to pitch their products to minors, and the City has submitted documentation in support of that view. But tobacco companies' advertisements attempt to appeal indiscriminately to any individual who views them; there is no contention here that the advertisements, whatever the marketing strategy behind them, say "Kids, get your Camels here." Regardless of whether tobacco advertising causes adolescents to smoke, or whether the tobacco companies have targeted the "youth market," advertising that does not directly incite illicit activity is protected. *Carey v. Population Services Int'l*, 431 U.S. 678, 701, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)).

It is also argued that tobacco advertising is misleading. Certainly there is evidence that tobacco advertisements seek to associate use of tobacco with all sorts of desirable activities, and thereby deliberately suggest that smoking will make you healthier, wealthier, wiser, and wildly popular. It is undisputed, however, that the tobacco advertisements in question contain truthful and nonmisleading information about brand availability and price. If "truthful and nonmisleading expression will be snared along with ... deceptive commercial speech, the State must satis-

---

7. Furthermore, if there is a communicative element in the location of self-service displays,

 a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

 *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (quoting *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). As discussed above, the regulation is within the authority of the City to enact; as discussed below, it furthers a substantial governmental interest.

Unlike restrictions or bans on advertising, the ban on self-service displays is unrelated to the suppression of expression. Any incidental effect on freedom of expression which may be alleged is minimal.

8. *See Edenfield v. Fane*, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993):

 The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented. Thus, even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment.

fy the remainder of the *Central Hudson* test by demonstrating that its restriction serves a substantial state interest and is designed in a reasonable way to accomplish that end." *Edenfield,* 507 U.S. at 768–69, 113 S.Ct. 1792.

The first prong of *Central Hudson* is therefore met: Sections 21–62 and 21–63 concern speech that involves lawful activity and is not misleading.

### B. *Substantial State Interests*

The parties agree that the Ordinance is designed to serve the substantial state interest of reducing illegal underage smoking. The Court notes as well the Vermont General Assembly's legislative findings section of Act 58, An Act to Restrict Minors' Access to Tobacco Products:

> Nearly 90 percent of all smokers begin smoking before age 18 ... 82 percent begin before the age of 16, and 38 percent before the age of 14. . . . According to the 1995 Vermont Youth Risk Behavior Survey, 38 percent of Vermont high school students smoke cigarettes.

P.A. 58, § 1(a), (b) (1997). The second prong of *Central Hudson* is met: the asserted governmental interest is substantial.

### C. *Direct Advancement of the Interest Asserted*

The parties' disagreement centers on the third and fourth prongs of the *Central Hudson* test. The impact of tobacco advertising on young people's decisions to smoke is passionately debated. *See, e.g.,* Jean J. Boddewyn, *Cigarette Advertising Bans and Smoking,* 13 Int'l J. Advertising 311 (1994); Joseph R. DiFranza et al., *RJR Nabisco's Cartoon Camel Promotes Camel Cigarettes to Children,* 266 JAMA 3149 (1991); Nicola Evans et al., *Influence of Tobacco Marketing and Exposure to Smokers on Adolescent Susceptibility to Smoking,* 87 J. Nat'l Cancer Inst. 1538 (1995); Lucy L. Henke, *Young Children's Perceptions of Cigarette Brand Advertising Symbols,* 24 J. Advertising 13 (1995); John P. Pierce et al., *Tobacco Industry Promotion of Cigarettes and Adolescent Smoking,* 279 JAMA 511 (1998). To meet the third *Central Hudson* requirement, the "government must demonstrate that the re-

striction on commercial speech directly and materially advances" the interest asserted. *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). "[M]ere speculation and conjecture" will not satisfy that burden; "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 626, 115 S.Ct. 2371 (quotations omitted).

The City must demonstrate therefore that its regulation of tobacco advertising will materially advance its goal of reducing underage smoking. Although the City has produced a wealth of reports and studies concerned about the effect of advertising and youth smoking, whether the bans in Sections 21–62 and 21–63 will make a material difference in the numbers of youths in Burlington who begin smoking or become addicted to nicotine is of course debatable at this point. To be sure, limiting tobacco advertising in Burlington will probably reduce consumption of tobacco purchased in Burlington stores by individuals of all ages, and therefore by extension reduce the consumption of tobacco purchased by minors. "There is an immediate connection between advertising and demand for [the product]." *Central Hudson,* 447 U.S. at 569, 100 S.Ct. 2343. Granting for the sake of argument that the regulation would have a material effect on reducing underage smoking, the City must still satisfy the fourth *Central Hudson* prong, "narrow tailoring."

### D. *Narrow Tailoring*

Under *Central Hudson*'s fourth criterion, the City must demonstrate that its Ordinance is "not more extensive than is necessary" to serve its asserted interest. In *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), the United States Supreme Court unanimously held that a ban on advertising liquor prices except at point of sale violated the First Amendment. Although the case produced four opinions, and no clear statement of the test to apply to a blanket ban on advertising, two opinions, representing the views of seven

Justices, emphasized the need for narrow tailoring of restrictions on commercial speech. *Id.*, at 507, 530, 116 S.Ct. 1495. In concluding that Rhode Island's ban was more extensive than necessary, these opinions both stressed the existence of other methods that would directly accomplish the asserted state interest without restricting speech. *Id.* The Rockwoods have suggested less intrusive alternatives to advance the City's interest, including stepped-up law enforcement efforts and public education programs, such as the City has recently implemented. The City has not shown that these measures are or will be ineffective. *See New York State Ass'n of Realtors, Inc. v. Shaffer*, 27 F.3d 834, 844 (2d Cir.1994).

 In the related cases of *Anheuser-Busch, Inc. v. Schmoke* and *Penn Advertising v. City of Baltimore*, the Fourth Circuit Court of Appeals upheld against a First Amendment challenge ordinances outlawing billboard advertising of alcohol and tobacco products in areas of Baltimore frequented by children. *Anheuser-Busch Inc. v. Schmoke*, 63 F.3d 1305, 1317 (4th Cir.1995), *vacated and remanded*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927, *readopted*, 101 F.3d 325 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997); *Penn Advertising v. Mayor and City Council of Baltimore*, 63 F.3d 1318, 1326 (4th Cir.1995), *vacated and remanded*, 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996); *readopted*, 101 F.3d 332 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 715 (1997). Baltimore's ordinances represented an attempt to confine certain kinds of billboard advertising to certain areas deemed appropriate. *Anheuser-Busch*, 101 F.3d at 329. By contrast, the City's Ordinance bans virtually all publicly visible advertising of tobacco products, including point-of-sale advertising, and exerts complete control over the kind of advertising that may be employed at all stores which offer tobacco

products for sale. Only in these cities' solicitude for their children are the circumstances similar. The City's Ordinance substantially exceeds Baltimore's regulation in its scope, and cannot be considered a mere time, place and manner restriction.[9]

 The Ordinance completely bans publicly visible tobacco advertising within one thousand feet of a school property. It restricts point-of-sale advertising to two black and white signs per retail establishment, and limits the information that may be displayed on them. It bans sponsorship advertising and distribution of free samples. None of these provisions is narrowly tailored to reduce underage smoking. Even the school property restriction is not narrowly tailored to affect advertising targeted at minors, because a substantial number of Burlington's schools provide education to adults. Although the City need not adopt the least restrictive means to achieve its goal, if a regulation is substantially excessive, disregarding far less restrictive and more precise means, it will be invalidated. *Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 479, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Because the restrictions and bans of the Ordinance are extremely broad, and because alternative means of achieving the City's aim are available to it, the City has failed to establish a "reasonable fit" between its Ordinance and its goal. *44 Liquormart*, 517 U.S. at 507, 532, 116 S.Ct. 1495.

The City's Ordinance Sections 21–62 and 21–63 do not pass the *Central Hudson* test, and are therefore invalidated as an unconstitutional restriction of commercial speech under the First and Fourteenth Amendments to the United States Constitution.

## IV. *Separability*

 Under Vermont law, whether the unconstitutionality of a portion of a statute

---

**9.** The government may impose reasonable restrictions on the time, place or manner of engaging in protected speech, provided that they are adequately justified without reference to the content of the regulated speech, in other words, that the regulations are "content-neutral." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428–29, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). Because it is precisely the content of the advertising—promotion of tobacco products—that triggers the City's concern, the City cannot logically maintain that its regulation is content-neutral.

renders the entire statute invalid depends on whether the legislative body would have enacted the statute without the invalid portion. *Bagley v. Vermont Dept. of Taxes,* 146 Vt. 120, 125, 500 A.2d 223, 226 (1985). Only those portions of an ordinance which fully operate as law apart from the portions declared invalid may be severed. *City of Burlington v. New York Times Co.,* 148 Vt. 275, 282, 532 A.2d 562, 566 (1987). If the provisions are "so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other," or are "essentially and inseparably connected in substance," then the entire statute must be declared invalid. *State v. Scampini,* 77 Vt. 92, 121–22, 59 A. 201, 211 (1904). "If the unconstitutional portion can be stricken out, and that which remains be complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." *Id.*

 The Ordinance's Section 21–64 prohibiting self-service tobacco sales displays is complete in itself and capable of being executed in accordance with the City's legislative intent of reducing underage tobacco use by restricting access to tobacco products. This Court concludes that the City Council would have enacted the measure separate from the unconstitutional components of its Ordinance. Section 21–64 is therefore sustained, and severed from the unconstitutional portions of the Ordinance.

## CONCLUSION

The Court commends the City's desire to combat adolescent smoking. It cannot, however, condone combat tactics which are prohibited by federal statute and which violate the First Amendment. Reducing youth smoking must be addressed in fashions other than extensive restrictions on tobacco advertising, where Congress has reserved the right to regulate to itself, and the regulations themselves are not narrowly tailored to fit the City's design. Cigarette advertising is not accorded the level of protection granted other forms of speech. *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 415, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (Blackmun, J.

concurring). But speech it is, and must receive the degree of First Amendment protection it is due. The Defendant's Motion for Summary Judgment (paper 25) is denied. The Plaintiffs' Motion for Temporary Restraining Order (paper 3) is denied as moot. The Defendant is permanently enjoined from enforcing Section 21–62 and Section 21–63 of Chapter 21, Article IV of the Code of Ordinances of the City of Burlington. The stay of enforcement is dissolved, and Section 21–64 stands in full force and effect.