189 F.3d 633 (7th Cir. 1999)
 FEDERATION OF ADVERTISING INDUSTRY REPRESENTATIVES, INC., an Illinois not-for-profit Corporation, Plaintiff-Appellee,
v.
CITY OF CHICAGO, THE CHICAGO CITY COUNCIL, RICHARD M. DALEY, in his official capacity as Mayor of the City of Chicago, and PAUL WOZNICKI, in his official capacity as Zoning Administrator of the City of Chicago, Defendants-Appellants.
 Nos. 98-3191, 99-1115 & 99-1516
 United States Court of Appeals, Seventh Circuit
 Argued June 10, 1999
Decided September 1, 1999
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 97 C 7619--Milton I. Shadur, Judge.
 Before HARLINGTON WOOD, JR., RIPPLE and MANION, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The Federation of Advertising Industry Representatives ("the Federation") brought this action seeking declaratory and injunctive relief against a City of Chicago ordinance that restricts public advertisement of cigarette and alcohol products ("the Ordinance"). In its complaint, the Federation submitted that the Ordinance violated the First Amendment, the Contracts Clause and the Due Process Clause of the Constitution of the United States. It also alleged that the Ordinance was preempted by the Federal Cigarette Labeling and Advertising Act ("the FCLAA" or "the Act") and by state law. The district court held that the Ordinance is preempted by the FCLAA. For the reasons stated in this opinion, we affirm in part and reverse in part the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 
 2
 * BACKGROUND
 
 
 3
 Chicago adopted an ordinance restricting public advertisement of cigarette products and alcohol. The Ordinance essentially bans all publicly visible advertising of such products, and then carves out certain exceptions. For example, the Ordinance exempts signs located near highways, in certain commercial and manufacturing zoning areas, at certain sports facilities and inside stores licensed to sell alcohol and cigarette products. The Ordinance permits signs on commercial vehicles transporting such products, and signs identifying the premises where such products are sold.[1]
 
 
 4
 The Federation submits that the Ordinance is preempted by sec. 5(b) of the FCLAA:
 
 
 5
 No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
 
 
 6
 15 U.S.C. sec. 1334(b).
 
 
 7
 Congress enacted the initial version of the FCLAA in 1965. That version required conspicuous labels warning of smoking's health risks on every package of cigarettes sold in the United States. The original preemption provision of the Act stated:
 
 
 8
 No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
 
 
 9
 15 U.S.C. sec. 1334 (1965). The current version of sec. 5(b) was adopted in 1969. Congress then made substantial revisions to the FCLAA. In addition to amending the preemption provision, the 1969 Amendment strengthened the required warning label and banned cigarette advertising in any electronic medium subject to regulation by the Federal Communications Commission.
 
 
 10
 The district court held that the plain language of sec. 5(b) of the 1969 Act applied to preempt the Ordinance's cigarette advertising restrictions. See Federation of Adver. Indus. Representatives v. City of Chicago, 12 F. Supp.2d 844, 848 (N.D. Ill. 1998). The court also held that the regulation of alcohol advertising was not severable from the preempted regulation of cigarette advertising.
 
 II
 DISCUSSION
 A.
 
 11
 Our interpretation of sec. 5(b) must begin with the Supreme Court's interpretation of that provision in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992). In Cipollone, the Court set out a general framework for addressing preemption involving sec. 5(b). Although a majority of the Court did not join all aspects of the lead opinion, a majority of the Court did agree that, in analyzing a preemption issue, we must "'start[ ] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' Accordingly, '[t]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." Id. at 516 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947) and Malone v. White Motor Corp., 435 U.S. 497, 504 (1978) (internal quotation marks omitted)). In Cipollone, the Court applied these principles in determining whether various common law claims against cigarette manufacturers had been preempted by the federal Act. Here, we are confronted with a different issue. We must determine whether the language applying preemption to those state laws that regulate "with respect to advertising and promotion" preempts the Ordinance. The holding of the Court in Cipollone does not, of course, resolve this precise issue. The Court's analysis, however, does provide valuable insight.
 
 
 12
 The 1969 Amendment broadened the scope of the FCLAA's preemption and, in certain cases, the broader language indicates greater preemption under the 1969 Act than under the 1965 Act. See Cipollone, 505 U.S. at 520. Nevertheless, as a unanimous Supreme Court has cautioned in a similar preemption context, see New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995), we must be careful not to adopt an "uncritical literalism" in approaching this difficult issue. Instead, we must follow the instruction of the Supreme Court that "any understanding of a pre- emption statute must rest primarily on 'a fair understanding of congressional purpose.'" Medtronic, Inc. v. Lohr, 518 U.S. 470, 485-86 (1996) (quoting Cipollone, 505 U.S. at 530 n.27) (emphasis in original).[2] In Travelers Insurance, the Court considered sec. 514 of the Employee Retirement Income Security Act ("ERISA"). A unanimous opinion of the Court stated:
 
 
 13
 The governing text of ERISA is clearly expansive. Section 514(a) marks for pre-emption "all state laws insofar as they . . . relate to any employee benefit plan" covered by ERISA, and one might be excused for wondering, at first blush, whether the words of limitation ("insofar as they . . . relate") do much limiting. If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. . . . We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.
 
 
 14
 Travelers Ins., 514 U.S. at 655-56.
 
 
 15
 The limiting language of the FCLAA at issue here ("with respect to advertising and promotion") is similar in its breadth to the language of ERISA sec. 514 ("relate to any employee benefits plan"). See Vango Media, Inc. v. City of New York, 34 F.3d 68, 74 (2d Cir. 1994). Despite the obvious difference in the statutes, the methodology set out in Travelers Insurance is helpful in interpreting the language of the FCLAA at issue here. If the FCLAA language ("with respect to advertising and promotion") were viewed with an "uncritical literalism," the effect would be to "read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." Travelers Ins., 514 U.S. at 656.
 
 
 16
 Following the Supreme Court's mandate in Travelers Insurance and in Medtronic, we must examine the congressional scheme and legislative history of sec. 5(b) in order to determine what Congress meant by this broad language. See id. (interpreting "relate to" under ERISA sec. 514 in accordance with the congressional goal of uniformity under ERISA); Medtronic, 518 U.S. at 484-85. In Cipollone, the Court stated that "the pre-preemptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in sec. 5 of each Act." 505 U.S. at 517. Notably, however, every opinion in Cipollone nevertheless relied on legislative history, historical context, legislative purpose, or analysis of the statutory provisions as a whole in interpreting the scope of the preemption mandated by the language of sec. 5(b) of the 1969 Act. See id. at 513-15, 519-20, 529 (plurality opinion); id. at 534-35, 539-42 (Blackmun, J., concurring in part and dissenting in part); id. at 553 (Scalia, J., concurring in part and dissenting in part). Indeed, in Medtronic, a majority of the Court took pains to clarify what it meant in Cipollone:
 
 
 17
 As in Cipollone, we are presented with the task of interpreting a statutory provision that expressly pre-empts state law. While the pre-emptive language of [the statute at issue in Medtronic] means that we need not go beyond that language to determine whether Congress intended the [statute] to pre-empt at least some state law, we must nonetheless "identify the domain expressly pre-empted" by that language. Although our analysis of the scope of the pre-emption statute must begin with its text, our interpretation of that language does not occur in a contextual vacuum. Rather, that interpretation is informed by two presumptions about the nature of pre-emption.
 
 
 18
 Medtronic, 518 U.S. at 484-85 (quoting Cipollone, 505 U.S. at 517) (citations omitted). The Court went on to discuss those two presumptions. First, it noted that, "because the States are independent sovereigns in our federal system," there has long been a presumption that "Congress does not cavalierly pre-empt state-law causes of action." Id. at 485. This presumption, remarked the Court, is especially applicable when Congress legislates in areas traditionally occupied by the historic police powers of the state. Second, continued the Court, in determining whether Congress has preempted such activity, the purpose of Congress must, in every case, be "the ultimate touchstone." Id. (quoting Retail Clerks Int'l Ass'n v. Schermerhorn, 375 U.S. 96, 103 (1963)). That intent is discerned, continued the Court, from the language of the Act, the statutory framework and the structure and purpose of the Act as a whole. See id. at 486. In light of the Supreme Court's clear mandate, we cannot limit our analysis solely to the language of sec. 5(b). Indeed, the only other circuit to confront whether the FCLAA preempts a similar ordinance has heeded the Supreme Court's words and adopted the methodology set forth in the Court's opinions. See Penn Adver. of Baltimore, Inc. v. Mayor and City Council of Baltimore, 63 F.3d 1318, 1324 (4th Cir. 1995), vacated and remanded on other grounds, 518 U.S. 1030 (1996), readopted, 101 F.3d 332 (4th Cir. 1996), cert. denied, 520 U.S. 1204 (1997).
 
 
 19
 Any other approach leads to results that we cannot believe Congress intended.[3] We cannot imagine that Congress intended the states to be without power to prohibit a cigarette company from handing out free cigarettes in an elementary school yard. However, failure to remember that Congress was concerned about the states' capacity to utilize their traditional police powers on matters that do not tread on federal interests inevitably will lead to such results. We can expect Congress to be far more explicit if it intends to dilute this residual authority of the states.
 
 
 20
 When we examine the FCLAA in light of congressional goals, we encounter two important manifestations of congressional intent that shed light on the scope of sec. 5(b) preemption in this case. The first does not require that we leave the text of the statute. Congress set forth, in the statutory text, an express statement of the purpose of the FCLAA and its preemptive provisions:
 
 
 21
 It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby--
 
 
 22
 (1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and
 
 
 23
 (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.
 
 
 24
 15 U.S.C. sec. 1331 (emphasis added). Moreover, the legislative history confirms that the preemption provision was adopted "to avoid the chaos created by multiplicity of conflicting regulations." S. Rep. No. 566, 1970 U.S.C.C.A.N. at 2663.
 
 
 25
 The second indication of the congressional intent confirms the message of this statutory text by indicating that Congress, in enacting the statute, was aware of the presumption against preemption and concerned about preserving areas of traditional local concern. The Senate Report refers to sec. 5(b) as "narrowly phrased" and not intended to touch state authority over sales to minors, taxation, indoor smoking, or "similar police regulations." S. Rep. No. 566, 91st Cong., 2d Sess. (1969), reprinted in 1970 U.S.C.C.A.N. 2652, 2663. We therefore must read the language of the FCLAA preemption provision in light of Congress' desire not only to ensure uniformity of regulation with respect to matters of labeling and advertising, but also in light of the manifest congressional concern in preserving for the states the remainder of their traditional police powers.
 
 B.
 
 26
 We turn then to the Ordinance to determine whether it is the type of police power regulation of local concern that Congress intended to preserve. See S. Rep. No. 566, 1970 U.S.C.C.A.N. at 2663. When the Ordinance is read in its entirety, it is clear that its thrust is the restriction of public advertisement of cigarettes (and alcohol products) in various locations. The Ordinance bans all public advertisement of such products, but then exempts certain sign types in certain locations. The Ordinance exempts signs located near highways, signs in certain commercial and manufacturing zoning areas, signs at certain sports facilities, signs inside a store that is licensed to sell alcohol and cigarette products, signs on commercial vehicles transporting such products, and signs identifying the premises upon which such products are sold.
 
 
 27
 Land-use and zoning issues have "'always been an intensely local area of the law.'" Gardner v. City of Baltimore Mayor and City Council, 969 F.2d 63, 67 (4th Cir. 1992) (quoting Carol M. Rose, Planning and Dealing: Piecemeal Land Controls as a Problem of Local Legitimacy, 71 Calif. L. Rev. 837, 839 (1983)) (tracing the history of land-use and zoning regulations in the United States); see also River Park, Inc. v. City of Highland Park, 23 F.3d 164, 165, 167 (7th Cir. 1994); Muckway v. Craft, 789 F.2d 517, 523 (7th Cir. 1986). More specifically, it has been established for quite some time that zoning restrictions on the sizes and placement of outdoor advertisements are well within the police power of states and municipalities.[4] See St. Louis Poster Adver. Co. v. City of St. Louis, 249 U.S. 269, 274-76 (1919); Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 529-31 (1917). Indeed, the Supreme Court has held that a Utah statute banning the outdoor advertisement of cigarettes is within that power. See Packer Corp. v. Utah, 285 U.S. 105, 108-10 (1932). The placement and manner of outdoor advertising is a matter of traditional local concern. Although Congress could choose to preempt such police regulations, it has indicated that it does not wish to do so under the FCLAA. See Penn Advertising, 63 F.3d at 1324; S. Rep. No. 566, 1970 U.S.C.C.A.N. at 2663. In short, considering Congress' express intent to preserve traditional areas of local concern not implicated by its desire for uniformity in advertising and labeling, we ought not imply, especially in light of the presumption against preemption, such an abrogation of a regulation of local interest and importance.
 
 
 28
 Our conclusion that this Ordinance is within the traditional local police power that Congress wished to preserve cannot end our inquiry. We still must examine the effect of the Ordinance on the federal interest in uniformity of labeling and advertising regulations. This inquiry requires that we focus on the precise sort of regulation that the Ordinance requires and determine whether compliance with the Ordinance will frustrate or burden the purpose of the federal statute. The Ordinance basically is a land-use regulation; it regulates the location and type of signs. In that respect, it creates no danger of interfering with the FCLAA's advertising and labeling requirements. See Penn Advertising, 63 F.3d at 1324.[5]
 
 
 29
 We do believe, however, that one aspect of the Ordinance is problematic in this regard. In addition to its many provisions regulating land- use, the Ordinance also purports to regulate the content of some advertising without regard to any land-use consideration. Specifically, the Ordinance permits advertising, without any location consideration, that is limited to a generic, as opposed to brand-specific, mention of a tobacco product. In our view, this provision, unlike the rest of the Ordinance, runs squarely into the prohibition of the current sec. 5(b), a provision that, we must remember, is substantially broader than its predecessor, which dealt solely with the specific labeling requirements.
 
 
 30
 Although we find this one aspect of the Ordinance to be preempted by federal law, we think it is clear that this aspect is severable from the rest of the Ordinance. We think it is clear that the City Council, intending to enact a broad land-use provision, would not have regarded the problematic provision as a necessary component of its handiwork. The Supreme Court of Illinois has recently noted, in considering a severability issue, that the courts have an "obligation to uphold legislative enactments whenever reasonably possible." People v. Sanders, 696 N.E.2d 1144, 1149 (Ill. 1998). That court has explained the test for severability:
 
 
 31
 [T]his court has long held that the test of severability is whether the valid and invalid provisions of the Act are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently . . . .
 
 
 32
 Cincinnati Ins. Co. v. Chapman, 691 N.E.2d 374, 382 (Ill. 1998) (quoting Fiorito v. Jones, 236 N.E.2d 698 (Ill. 1968)) (internal quotation marks omitted). We believe that it is "reasonably possible" to sever the provision in question because severability would not hinder the goal of the Ordinance, which is to restrict the advertisement of cigarettes and alcohol. We cannot say that the Council would not have passed the Ordinance without this minor provision.
 
 Conclusion
 
 33
 For the foregoing reasons, the judgment of the district court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. The City is entitled to its costs in this appeal.
 
 
 34
 AFFIRMED in part and REVERSED and REMANDED in part.
 
 
 
 Notes:
 
 
 [1]
 The text of the Ordinance states:
 (a) No person may place any sign, poster, placard or graphic display that advertises cigarettes or alcoholic beverages in a publicly visible location. In this section, "publicly visible location" includes outdoor billboards, sides of buildings, and freestanding signboards. This section shall not apply to:
 1. (A) With respect to cigarettes, the placement of signs, including advertisements, inside any premises used by a holder of a license required by chapter 4-64 of this code; or (B) With respect to alcoholic beverages, the placement of signs, including advertisements, inside any premises used by a holder of a license required by chapter 4-60 of this code; or (C) On commercial vehicles used for transporting cigarettes or alcoholic beverages;
 2. (A) With respect to cigarettes, any sign that contains the name or slogan of the premises used by a holder of a license required by chapter 4-64 of this code that has been placed for the purpose of identifying such premises; or (B) With respect to alcoholic beverages, any sign that contains the name or slogan of the premises used by a holder of a license required by chapter 4-60 of this code that has been placed for the purpose of identifying such premises;
 3. Any sign that contains a generic description of cigarettes or alcoholic beverages;
 4. (A) With respect to cigarettes, any neon or electrically charged sign on premises used by a holder of a license required by chapter 4-64 of this code that is provided as part of a promotion of a particular brand of cigarettes; or (B) With respect to alcoholic beverages, any neon or electrically charged sign on premises used by a holder of a license required by chapter 4-60 of this code that is provided as part of a promotion of a particular brand of alcoholic beverage;
 5. Any sign at a special event, as that term is defined in section 10-8-335 of this code;
 6. Any sign on a CTA vehicle;
 7. Any sign on property owned, leased or operated by the Illinois Sports Facilities Authority;
 8. Any sign at Comiskey Park, Soldier Field, the United Center, or Wrigley Field;
 9. Any sign on property adjacent to an interstate highway; or
 10. Any sign located in a C3 District (Commercial-Manufacturing), a C4 District (Motor Freight Terminal), or any M District (Manufacturing).
 (b) This section shall not be construed to permit any display that is otherwise restricted or prohibited by law.
 (c) The penalty for violation of this section shall be as set forth in section 11.13 of this Title.
 R.1, Ex.A.
 
 
 [2]
 Although the lead opinion in Medtronic did not carry a majority of the Court, a majority of the Court did agree with the general principles at issue here.
 
 
 [3]
 We need not hypothesize such results; adherence to a more rigid approach already has produced them. One court has held that the FCLAA prevents states and municipalities from restricting both advertisements of cigarettes near schools and distributions of free cigarette samples. See Rockwood v. City of Burlington, 21 F. Supp.2d 411, 420 (D. Vt. 1998).
 
 
 [4]
 This authority is subject, of course, to the First Amendment protection of such signs. See generally 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996). We express no opinion with respect to the First Amendment challenge to the Ordinance, which the district court must address on remand.
 
 
 [5]
 In this respect, the Ordinance here marks a sharp contrast with the ordinance in Vango Media, Inc. v. City of New York, 34 F.3d 68 (2d Cir. 1994). In Vango Media, the court considered whether an Ordinance requiring a minimum of one public health message for every four cigarette advertisements on city-licensed facilities was preempted by the FCLAA. The court held that the regulation was "with respect to advertising and promotion of cigarettes," and therefore preempted. In reaching this conclusion, the court noted that the regulation would create the nonuniformity that Congress feared. See id. at 74. There, unlike here, the local law would require that certain anti-smoking messages be carried in cigarette advertisements, thereby directly conflicting with the advertisement message requirements contained in the FCLAA and creating nonuniformity with those provisions.